UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 2339A (Providing Material |
| v. | : | Support to Terrorists) |
| | : | |
| | : | 18 U.S.C. § 793(d) (Communicating |
| | : | National Defense Information to Persons not |
| | : | Entitled to Receive it) |
| HASSAN ABUJIHAAD, | : | |
| a/k/a PAUL R. HALL | : | 18 U.S.C. § 2 |

**I N D I C T M E N T**

The Grand Jury charges that:

**INTRODUCTION**

1. From on or about December 20, 1997, through on or about January 25, 2002, HASSAN ABUJIHAAD, a/k/a PAUL R. HALL ("ABUJIHAAD"), was an enlisted member of the United States Navy. From on or about July 1, 1998, through on or about January 10, 2002, ABUJIHAAD was assigned to a United States Navy destroyer named the *U.S.S. Benfold*, where his primary position was Signalman. In March and April 2001, the *U.S.S. Benfold* was part of a United States Navy Battle Group directed to transit from California to the Persian Gulf region.

2. On January 6, 1998, in connection with his duties in the United States Navy, ABUJIHAAD was approved by the Department of the Navy Central Adjudication Facility ("DONCAF") for access to information classified at the "Secret" level pursuant to Executive Order 12,958, as amended by Executive Order 13,292.

3.  Pursuant to Executive Order 12,958, as amended by Executive Order 13,292, national security information may be classified as, among other things, "Secret."  The designation "Secret" applies to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security.  Classified information may only be declassified by the original classification authority.

4.  At no time material to this Indictment was ABUJIHAAD authorized to release to any person or declassify classified information, except in accordance with Executive Order 12,958, as amended by Executive Order 13,292.

5.   As used by fundamentalist Muslim groups, the term "jihad" is an Arabic term meaning "holy war" and refers to the use of violence, including paramilitary action, against persons or governments that are deemed to be enemies of its proponents, who espouse a fundamentalist version of Islam that advocates the use of military action and violence in this respect.  The term "mujahid," as used by fundamentalist Muslim groups, is an Arabic word meaning "holy warrior," and refers to an individual who engages in violence as used in this Indictment.  "Mujahideen" is the plural form of "mujahid."

6.  At all times material to this Indictment, the Taliban was the political/military entity formerly headquartered in Kandahar, Afghanistan that exercised de facto control over the territory of Afghanistan until its defeat in late 2001 and early 2002 by a multi-national coalition that included the United States.

7.  At all times material to this Indictment, the Chechen Mujahideen was a group of mujahideen that has employed violence and military action in an effort to promote the political goals of its members, which include establishing the independence of Chechnya from Russia.

The armed conflicts in the geographic areas of Bosnia, Chechnya, Afghanistan and elsewhere have involved murder, maiming, kidnaping, and the destruction of property.

  8.  At all times material to this Indictment, Al Qaeda was an international terrorist group dedicated to opposing governments not established under strict Islamic law.  The group was founded by Usama bin Laden and others.  Bin Laden declared a jihad, or holy war, against the United States and its citizens, which he carried out through Al Qaeda and its affiliated organizations.  Beginning in or about 1996, Usama bin Laden and others operated Al Qaeda from their headquarters in Afghanistan, and forged close relations with the Taliban in Afghanistan.

Azzam Publications

  9.  At all times material to this Indictment, AZZAM PUBLICATIONS, which is named but not charged herein, was an entity based in the United Kingdom that was established and operated to recruit individuals to become mujahideen and to solicit and raise funds and assistance for jihad, including for the Taliban and Chechen mujahideen.

  10.  At all times material to the Indictment, BABAR AHMAD, a/k/a BABAR AHMED a/k/a "Mr. B", a/k/a "mrbee42", who is named but not charged herein, was a resident of the United Kingdom living in London, England, who operated and directed the operation of AZZAM PUBLICATIONS and its family of websites which existed throughout the world, including azzam.com, azzam.co.uk, qoqaz.net, qoqaz.co.uk, webstorage.com/~azzam, and waaqiah.com.

  11.  At all times material to the Indictment, SYED TALHA AHSAN, who is named but not charged herein, was a resident of the United Kingdom living in London, England, who participated in the operation of AZZAM PUBLICATIONS and its family of websites which existed throughout the world, including azzam.com, azzam.co.uk, qoqaz.net, qoqaz.co.uk, webstorage.com/~azzam, and waaqiah.com.

The Websites

12. AHMAD, AHSAN and others helped create, operate and maintain, and caused to create, operate and maintain, the websites referred to in paragraphs 10 and 11 in the following locations: Connecticut, Nevada, the United Kingdom, Ireland, Malaysia and elsewhere. These websites, and other forms of internet communications, posted and transmitted materials which were designed and intended to: recruit mujahideen, raise funds for violent jihad, recruit personnel for the Chechen Mujahideen, the Taliban and associated groups, and give instructions for travel to Pakistan and Afghanistan to fight with these groups, provide instructions for the surreptitious transfer of funds to the Taliban, and solicit military items for these groups, including gas masks and night vision goggles.

13. AHMAD, AHSAN and others established, maintained and used various e-mail accounts associated with the websites to administer the websites, hide their identities, communicate with other individuals also involved in the operation and administration of the websites, communicate with members of the Taliban, Chechen Mujahideen, and associated groups, communicate with members of the public who sought to support violent jihad activities depicted on the websites, communicate with those who responded to the internet solicitations for material support and individuals who wished to join these groups, solicit donations to support violent jihad and coordinate the transfer of money, and communicate with and provide to those who sought to purchase items advertised on the websites. These items included videotapes depicting and promoting violent jihad in Chechnya, Bosnia, Afghanistan, and other lands of jihad, and the torture and killing of captured Russian troops.

Communications Between ABUJIHAAD and Azzam Publications

14. From at least August 21, 2000, through September 2, 2001, participants in the operation of Azzam Publications used certain e-mail accounts associated with these websites to communicate with ABUJIHAAD. These communications occurred while ABUJIHAAD was assigned to the *U.S.S. Benfold*.

15. In these communications, ABUJIHAAD sent and received messages using a number of email addresses, including abujihaad01@hotmail.com, abujihah@benfold.navy.mil, and AbujihaadH@benfold.navy.mil.

16. ABUJIHAAD's abujihah@benfold.navy.mil email account was saved by, and found in the possession of, the members of Azzam Publications, insofar as it had been saved in one of the Azzam Publications' Yahoo Address Books.

17. In several emails from August 21, 2000, to May 18, 2001, ABUJIHAAD inquired about the status of his purchases from Azzam Publications of videos depicting violent jihad in Chechnya and Bosnia; indicated that he had sent money to Azzam Publications; and provided his name and home address to Azzam Publications.

18. In or about July 2001, ABUJIHAAD sent an email to Azzam Publications regarding the reaction of officers and other enlistees to a force protection briefing given on the ship. The email indicated that the briefing was provided to help Naval personnel protect against terrorist attacks similar to the October 2000 attack on the *U.S.S. Cole*. Voicing enmity towards the "American enemies" and strong support for the "Mujahideen Feesabilillah," ABUJIHAAD's email praised those who attacked the *U.S.S. Cole* and "the men who have bro[ught] honor . . . in the lands of Jihad Afghanistan, Bosnia, Chechnya, etc.," and described that attack as a "martyrdom operation."

19.  On July 19, 2001, a reply from an Azzam Publications email account praised ABUJIHAAD's comments and encouraged him to "Keep up with the Dawah and the psychlogical warefare [sic]."

20.  Additional email exchanges in late July 2001 indicate that ABUJIHAAD sought to purchase an additional video from Azzam Publications; instructed them to send that video to him on the *U.S.S. Benfold*; and further encouraged Azzam Publications to "keep up the great work."

The Battle Group Document

21.  In or about March or April 2001, ABUJIHAAD communicated, delivered and transmitted, and caused to be communicated, delivered and transmitted, to Azzam Publications, Babar Ahmad, and Syed Talha Ahsan, classified information about a United States Navy Battle Group which was scheduled to move from California to the Persian Gulf region in March and April 2001, and which was charged with enforcing sanctions against the Taliban and engaging in missions against Al Qaeda.

22.  Specifically, during a December 2003 search of Babar Ahmad's room at his parent's house in London, British law enforcement officers recovered a computer floppy disk that, among other things, contained a password-protected Microsoft Word file that set forth previously classified information regarding the movements of the Battle Group.

23.  The electronic document, which was last modified and saved on April 12, 2001, discussed, in considerable detail, the makeup of the Battle Group, each of its member ships (including the *U.S.S. Benfold*, on which ABUJIHAAD was then stationed), the specifications, assignments and missions of each ship, the Battle Group's planned movements, and included a drawing of the group's formation when it was to pass through the Straits of Hormuz.  The document specifically noted that the Battle Group was tasked with enforcing sanctions against

Iraq and conducting operations against Afghanistan, including the Taliban and Al Qaeda. The document stated that the Battle Group was scheduled to pass through the Straits of Hormuz on April 29, 2001, at night, under a communications blackout, and explicitly described the group's vulnerability to a terrorist attack:

> **Weakness:**
>
> They have nothing to stop a small craft with RPG etc, except their Seals' stinger missiles.
>
> **Deploy ops in Gulf 29 April - 04 October.**
>
> **29th APRIL is more likely the day through the Straits. For the whole of March is tax free - a moral booster.  Many sailors do not like the Gulf.**
>
> **Please destroy message.**

24.  Syed Talha Ahsan had previously possessed, accessed, modified and re-saved the electronic Battle Group document before it was found in Babar Ahmad's possession.

25.  Advance knowledge of the Battle Group's movements to the Persian Gulf was classified SECRET.

26.  At all times material to this Indictment, neither Babar Ahmad nor Syed Talha Ahsan were eligible to access, receive or possess information classified by the United States. Accordingly, Babar Ahmad and Syed Talha Ahsan were not entitled to receive the Battle Group material.

27.  The information set forth in the Battle Group document relates to the national defense and could have been used to the injury of the United States.  The information set forth in the Battle Group document, including advance knowledge of the location and movements, missions, personnel and capabilities of the ships, has significant implications for force protection and would be very useful to terrorists attempting to plan an attack.

**COUNT ONE (Providing Material Support to Terrorists)**

28. The allegations of paragraphs 1 through 27 are re-alleged as if fully set forth herein.

29. From in or about March or April 2001 through in or about September 2001, in the District of Connecticut and elsewhere, HASSAN ABUJIHAAD, a/k/a PAUL R. HALL, provided material support or resources, to wit, personnel and physical assets, knowing or intending that such support would be used in preparation for, or in carrying out, a violation of 18 U.S.C. § 2332(b) (conspiring to kill United States nationals).

All in violation of Title 18, United States Code, Section 2339A and Title 18, United States Code, Section 2.

**COUNT TWO (Communicating national defense information
to persons not entitled to receive it)**

30. The allegations contained in paragraphs 1 through 27 of the Indictment are re-alleged as if fully set forth herein.

31. In or about March or April 2001, the exact date being unknown to the grand jury, in the District of Connecticut and elsewhere, HASSAN ABUJIHAAD, a/k/a, PAUL R. HALL, lawfully having possession of, access to, control over, and being entrusted with classified information relating to the national defense – namely, information about a United States Navy Battle Group scheduled to travel to the Persian Gulf region – which information the defendant had reason to believe could be used to the injury of the United States, did unlawfully, knowingly, and willfully communicate, deliver, and transmit such information, and caused such information to be communicated, delivered and transmitted, to a person or persons not entitled to receive it.

All in violation of Title 18, United States Code, Section 793(d).

A TRUE BILL

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
GRAND JURY FOREPERSON

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
STEPHEN B. REYNOLDS				WILLIAM J. NARDINI
ASSISTANT U.S. ATTORNEY			ASSISTANT U.S. ATTORNEY