UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNTIED STATES OF AMERICA | : |
| | : |
| v. | : No. 3:07CR57(MRK) |
| | : |
| HASSAN ABU-JIHAAD | : |

**MEMORANDUM OF DECISION**

The Government has moved to admit at trial certain statements against the defendant Hassan Abu-jihaad under Rule 801(d)(2)(E) of the *Federal Rules of Evidence*, the co-conspirator exception to the hearsay rule. *See* Government's Motion in Limine Pursuant to Federal Rules of Evidence 801(d)(2)(E) and 801(d)(2)(A); Notice of Intention to Introduce Certain Evidence of Intent; and Notice of Intention to Rely on Other Act Evidence Pursuant to Rule 404(b) ("Government's Motion in Limine") [doc. # 110]. The Government's motion also seeks to introduce certain other statements against Mr. Abu-jihaad under Rule 801(d)(2)(A) and to rely upon certain evidence pursuant to Rule 404(b). This ruling is limited to the Government's request to admit certain evidence under Rule 801(d)(2)(E); the Court will take up the Government's other requests in future rulings. In accordance with the Court's oral ruling at the close of oral argument on January 4, 2008, the Court denies the Government's request to admit the statements under Rule 801(d)(2)(E).

The Court held a two-day evidentiary hearing on the Government's motion on November 28 and 29, 2007 [doc. ## 136,137], during which the Court heard testimony from a Special Agent of the Federal Bureau of Investigation and a cooperating witness; the Court also listened to numerous

1

recorded conversations between and among Mr. Abu-jihaad, the cooperating witness ("CW"), and Mr. Derrick Shareef, among others. The parties also filed lengthy pre- and post-hearing briefs in support of and opposition to the Government's motion. *See* Government's Memorandum in Support of the Admission of Evidence Pursuant to Federal Rules of Evidence 801(d)(2)(E) and 801(d)(2)(A) ("Government's Pre-Hearing Memorandum") [doc. # 110]; Defendant's Memorandum in Opposition to the Government's Motion in Limine Seeking the Introduction of Certain Evidence Against Defendant in Its Case in Chief Pursuant to Federal Rules of Evidence 801(d)(2)(E) and 404(b) [doc. # 134]; Government's Supplemental Memorandum of Law Re: Co-Conspirator Statements ("Government's Supplemental Memorandum") [doc. # 164]; Defendant's Post-Hearing Brief in Opposition to the Government's Motion in Limine [doc. # 156]. In addition, the Government filed a post-hearing memorandum that specifically identified which statements the Government sought to introduce under which rule of evidence. *See* Government's Listing of Evidence Implicated by Its Motion in Limine and Identification of the Evidentiary Basis Pursuant to Which It Seeks Admission of That Evidence ("Government's Listing") [doc. # 146 ]. The Court held a lengthy oral argument on the Government's motion on January 4, 2008. The Court wishes to express its gratitude to all counsel for the highly skilled and professional manner in which they have conducted themselves in connection with the Government's motion.

# I.

The following is but a brief factual recitation necessary to illuminate the issues raised by the Government's motion. Many more facts are set forth in the parties' briefs or were developed during the hearing, but as the parties themselves are familiar with those record facts, the Court sees no

reason to burden this ruling with all of the background facts underlying this prosecution and reflecting on the issues raised by the Government's motion.

On October 2004, a grand jury sitting in the District of Connecticut indicted Babar Ahmad, a British national, with conspiring with others and through an entity called "Azzam Publications" to provide material support to terrorists and to kill or injure persons in a foreign country. *See United States v. Ahmad*, No. 3:04cr301 (MRK). During a December 2003 search of Mr. Ahmad's room in Britain, British law enforcement officers had recovered a computer floppy disk containing, among other things, a Microsoft Word© document (the "Battle Group document") that the Government contends sets forth classified information regarding the movements in the spring of 2001 of a United States Navy battle group. The battle group, which included the Navy destroyer *U.S.S. Benfold*, was charged with enforcing sanctions against the Taliban and engaging in missions against Al Qaeda. Searches later discovered several email exchanges from late fall 2000 to the fall of 2001 between Mr. Abu-jihaad, who was then serving as a signalman aboard the *Benfold* on active duty in the Middle East, and Azzam Publications, though the Battle Group document was not among them. Mr. Abu-jihaad was not indicted at the same time as Mr. Ahmad.

Mr. Abu-jihaad was honorably discharged from the Navy in early 2002 and settled in Phoenix, Arizona. The Government contends that sometime in 2003, Mr. Abu-jihaad met Derrick Shareef, who was then approximately eighteen years old, at an Islamic Community Center in Phoenix. Both Mr. Abu-jihaad and Mr. Shareef are converts to Islam. Mr. Shareef then lived with Mr. Abu-jihaad for some period of time in 2004. During the period of time that Mr. Shareef lived with Mr. Abu-jihaad, the grand jury's indictment of Mr. Ahmad became public, and several news accounts speculated publicly that Mr. Abu-jihaad was the individual who provided the Battle Group

document to Azzam Publications. Mr. Shareef moved from Phoenix to the Chicago area in late 2004. According to the Government, Mr. Shareef "only had intermittent contact with" Mr. Abu-jihaad from 2004 through July 2006. *See* Government's Pre-Hearing Memorandum [doc. # 110], at 16.

In the fall of 2006, the FBI directed the CW, a Muslim convert living in Rockford, Illinois, to befriend Mr. Shareef. The CW had been cooperating with the Government since 2001. According to the FBI Special Agent who testified at the hearing, the Government's interest in having the CW befriend Mr. Shareef was not to gain information on Mr. Abu-jihaad, and the CW was not told about Mr. Abu-jihaad. On the first day they met – October 1, 2006 – the CW invited Mr. Shareef to live with him, and Mr. Shareef agreed. Thereafter and until Mr. Shareef was arrested in December 2006, the CW engaged Mr. Shareef in numerous conversations that were recorded. The CW and Mr. Shareef also spoke with Mr. Abu-jihaad on phone calls that were recorded.

At the risk of gross over-simplification but in the interest of brevity, the recordings, as well as the CW's testimony, showed that the following occurred while Mr. Shareef was living with the CW in late 2006: Mr. Shareef and the CW discussed a plan to attack an unspecified military installation in San Diego; Mr. Shareef suggested that Mr. Abu-jihaad might help with the plan and told the CW that in 2004, while he was living in Phoenix, Mr. Abu-jihaad had disclosed to Mr. Shareef that he had sent the Battle Group document to Azzam Publications, and also that Mr. Abu-jihaad and Mr. Shareef had discussed a plan to attack a military installation in San Diego and a recruiting station in Phoenix; after a trip to Phoenix in late October 2006, Mr. Shareef informed the CW that Mr. Abu-jihaad would provide support for their plan; in various conversations in November and December, Mr. Abu-jihaad made statements that the Government contends show that he had

4

agreed to provide logistical support for a Shareef-CW plan to conduct a sniper attack on an unspecified military installation in San Diego; during other conversations between the CW and Mr. Abu-jihaad, the Government contends that Mr. Abu-jihaad expressed his interest in secrecy and his concern about Mr. Shareef talking too much about Mr. Abu-jihaad; Mr. Shareef and Mr. Abu-jihaad discussed acquiring weapons with the CW; according to the CW and the Special Agent, in December, Mr. Shareef and Mr. Abu-jihaad had a falling-out because Mr. Shareef had become impatient with Mr. Abu-jihaad; Mr. Shareef therefore decided to pursue a plan of his own, which involved a grenade attack on a shopping mall; the CW arranged to provide Mr. Shareef with grenades and weapons for his shopping mall attack plan.

Mr. Shareef was arrested while on his way to execute his shopping mall attack plan, and he was awaiting trial in Illinois on charges relating to that plan when he pleaded guilty to the charges in November 2007. The Government does not claim that Mr. Abu-jihaad played any role in connection with Mr. Shareef's planned shopping mall attack. Following his arrest in Illinois, Mr. Shareef spoke on several occasions with the FBI, and summaries of his conversations with the FBI Special Agent were admitted into evidence in connection with the Government's motion. Among other things, Mr. Shareef informed the Special Agent that the information he gave the CW about Mr. Abu-jihaad having sent the Battle Group document to Azzam Publications was derived from the newspaper accounts that had speculated about Mr. Abu-jihaad's involvement and was not based on anything Mr. Abu-jihaad himself had told Mr. Shareef. However, the Special Agent testified that he believed Mr. Shareef was lying to protect Mr. Abu-jihaad.

In March 2007, Mr. Abu-jihaad was indicted in the District of Connecticut and charged with providing material support to terrorists in violation of 18 U.S.C. § 2339A and 18 U.S.C. § 2 and

5

communicating national defense information to persons not entitled to receive it in violation of 18 U.S.C. § 793(d). Indictment [doc. # 6]. Each of these charges stems from the Government's assertion that Mr. Abu-jihaad transmitted the Battle Group document to Mr. Ahmad and Azzam Publications in 2001. Trial is currently scheduled to begin on February 25, 2008.

## II.

In its listing of evidence implicated by its motion [doc. # 146], the Government identifies five statements it seeks to admit at trial under the co-conspirator exception, Rule 801(d)(2)(E). The Court has on multiple occasions reviewed the transcripts of the statements the Government seeks to introduce, and the Court refers readers to the transcripts themselves (or the CW's testimony) for a complete version of those statements. By way of summary, however, the statements are as follows: First, during the very first conversation between the CW and Mr. Shareef on October 1, 2006, the CW testified that Mr. Shareef told the CW that Mr. Abu-jihaad sent the Battle Group document to Azzam Publications. This statement is not recorded. On October 5, 2006, in a recorded conversation (AR001), Mr. Shareef repeated his statement that Abu-jihaad sent the Battle Group document to Azzam Publications and that when news stories broke about the indictment of Mr. Ahmad, Mr. Abu-jihaad "immediately started getting rid of everything," including videos supporting violent jihad. On October 9, 2006, Mr. Shareef again told the CW (in an unrecorded conversation) that Mr. Abu-jihad had disclosed Navy coordinates and information to Azzam Publications. On October 11, 2006, in a recorded conversation (AR 002), Mr. Shareef discussed Mr. Abu-jihaad's provision of the Battle Group document and told the CW that he had taken an oath to Mr. Abu-jihaad and Mr. Abu-jihaad's brother not to relate that information to anyone. Finally, on October 13, 2006, in a recorded conversation (AR 003), Mr. Shareef and the CW discussed Mr. Abu-jihaad's

6

destruction of videos and his interest in secrecy. In short, the statements the Government seeks to introduce against Mr. Abu-jihaad are all from early October 2006, they are all statements by Mr. Shareef (who is not expected to be a witness at trial), and they all principally involve statements that Mr. Abu-jihaad told Mr. Shareef in 2004 that he had provided the Battle Group document to Azzam Publications in 2001.

Rule 801(d)(2)(E) of the *Federal Rules of Evidence* provides that a statement is not hearsay if

> [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered . . . .

Fed. R. Evid. 801(d)(2)(E). Therefore, for a statement to be admissible under Rule 801(d)(2)(E), a court must find by a preponderance of the evidence that: (1) there was a conspiracy in existence; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statement was made (a) in furtherance of the conspiracy and (b) during the course of the conspiracy. *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Stewart*, 433 F.3d 273, 291 (2d Cir. 2006); *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993); *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990). The Second Circuit has clarified that

> [a]s the "in furtherance" term implies, the statements must in some way have been designed to promote or facilitate achievement of the goals of the ongoing conspiracy, as by, for example, providing reassurance to a coconspirator, seeking to induce a coconspirator's assistance, serving to foster trust and cohesiveness, or informing coconspirators as to the progress or status of the conspiracy, or by prompting the

listener – who need not be a coconspirator – to respond in a way that promotes or facilitates the carrying out of a criminal activity.

*Tracy*, 12 F.3d at 1196 (citations omitted); *see Maldonado-Rivera*, 922 F.2d at 958; *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989). However, mere idle chatter does not satisfy the "in furtherance" requirement. *See, e.g.*, *Tracy*, 12 F.3d at 1196.

The gist of conspiracy is agreement. Therefore, the conspirators must have "entered into a joint enterprise with consciousness of its general nature and extent." *Beech-Nut*, 871 F.2d at 1191. However, "the individual conspirators can have incongruent intentions as to particular details or specific goals of the conspiracy, so long as the coconspirators share a 'common purpose' and agree on the 'essential nature' of the enterprise." *United States v. Capanelli*, 479 F.3d 163, 166-67 (2d Cir. 2007); *see United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998) ("The defendant need not know . . . all of the details of the conspiracy."). Finally, the conspiracy that serves as the vehicle for introduction of the co-conspirator's statements need not be charged in the indictment involving the defendant against whom the statements are offered. *See, e.g.*, *United States v. Russo*, 302 F.3d 38, 45 (2d Cir. 2002).[1]

---

[1] However, Mr. Abu-jihaad argues that the conspiracy must be "factually intertwined" with the charges against the defendant. A number of statements by the Second Circuit support Mr. Abu-jihaad's argument. The requirement appears to have originated in *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979). *See United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985) ("The Government merely needs to demonstrate that the declarant and the defendants against whom the statements are offered are members of a conspiracy in furtherance of which the statements are made, and that this conspiracy is 'factually intertwined' with the offenses being tried.") (citations omitted); 5 Weinstein's Federal Evidence § 801.34[3][b], at 801-82 (2d ed. 2007). The Second Circuit has also repeated this requirement in numerous unpublished decisions. *See, e.g.*, *United States v. Vargo*, 185 Fed. Appx. 111, 115 (2d Cir. 2006). It is not clear to the Court whether the Second Circuit's "factually intertwined" requirement is based on Rule 801(d)(2)(E) or is merely a reflection of the relevance and unfair prejudice standards of Rules 402 and 403. Nor is it entirely clear what type of showing the "factually intertwined" requirement demands, let alone whether that showing has been met in this case. Because the Court is able to resolve this case on other grounds, the Court need not,

As even the Government acknowledges, the factual context in which the statements in question arise is rather unique. As but one example, the statements were made by Mr. Shareef five years after the events that form the basis of the charges against Mr. Abu-jihaad, and they purport to relate to statements made by Mr. Abu-jihaad three years after he allegedly sent the Battle Group document to Azzam Publications. Therefore, the Government's motion raises a host of interesting issues for which there is not much guidance in existing case law. However, as explained in the course of its oral ruling on January 4, 2008, the Court believes that two principles are particularly relevant to resolution of the Government's motion, and there is ample case law on each principle.

First, as the Government agrees, the conspiracy that serves as the basis for admitting the statements "must be in existence at the time the statement[s are] made. 'Statements made before a conspiracy was actually formed fall outside the realm of Rule 801(d)(2)(E).'" Government's Supplemental Memorandum [doc. # 164], at 6 (quoting 5 Weinstein's Federal Evidence § 801.34[4][a], at 801-84 (2d ed. 2007); *see, e.g.*, *Anderson v. United States*, 417 U.S. 211, 218 (1974) ("The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was . . . in progress, a limitation that this Court has scrupulously observed.") (quotations

---

and does not, address the "factually intertwined" requirement.

omitted).² This principle flows from the requirement in Rule 801(d)(2)(E) that the statement be made "during the course" of the conspiracy.

Therefore, as the Government explains in its post-hearing brief, "Because [it] has alleged that there were only two conspirators – Shareef and the defendant – the conspiracy did not exist until the defendant joined it. Accordingly, Shareef's statements can be deemed 'during the course . . . of the conspiracy,' Fed. R. Evid. 801(d)(2)(E), only if the Court finds that the defendant joined the conspiracy before Shareef made the statements in question." Government's Supplemental Memorandum [doc. # 164], at 6; *see also id.* at 7 ("Because a single person cannot constitute a conspiracy under federal law (and because a government informant cannot be a co-conspirator), *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977), any statements made before the defendant entered into a conspiratorial agreement with Shareef would therefore fall outside the purview of Rule 801(d)(2)(E)."). This first principle means that the Court must find by a preponderance of the evidence that Mr. Abu-jihaad and Mr. Shareef had entered into a conspiracy on or before October 13, 2006, the date of the last statement the Government seeks to introduce under Rule 801(d)(2)(E).

Second, as the Government also acknowledges, while the Court may consider the co-conspirator statements themselves in making the determinations required by Rule 801(d)(2)(E), there

---

² As the Government notes, there are decisions that permit introduction of statements made before a participant joined a conspiracy, but such cases involve a pre-existing conspiracy in which at least two other participants had already formed the requisite agreement. The rationale of these cases is that when a person joins an existing conspiracy, he also assumes responsibility for his co-conspirators' prior actions and statements. *See, e.g.*, *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986); 5 Weinstein's Federal Evidence § 801.34[4][a], at 801-84 (2d ed. 2007). However, this theory is of no assistance to the Government (as it acknowledges) because the only alleged conspirators are Mr. Shareef and Mr. Abu-jihaad.

10

must be some corroborating evidence *independent* of the statements regarding the existence of the conspiracy and the defendant's participation in it. Thus, in *United States v. Tellier*, 83 F.3d 578 (2d Cir. 1996), the Second Circuit observed that an alleged co-conspirator's hearsay statements are "presumptively unreliable and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Id.* at 580 (quoting *United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir. 1994) ("Since *Bourjaily*, all circuits addressing the issue have explicitly held absent *some* independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.")) (citation omitted); *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001). The quantum of independent evidence needed to corroborate the existence of a conspiracy necessarily is dependent on the totality of circumstances, including the strength of the hearsay statements themselves. In cases where "the hearsay evidence itself so convincingly implicates the defendant, a district court may require less corroboration to find by a preponderance of the evidence that the defendant participated in the conspiracy for purposes of admitting co-conspirators' statements against him." *United States v. Padilla*, 203 F.3d 156, 162 (2d Cir. 2000).

Here, the Government contends that Mr. Shareef and Mr. Abu-jihaad entered into a conspiracy to commit sedition in violation of 18 U.S.C. § 2384, and to kill or attempt to kill military personnel in violation of 18 U.S.C. § 1117. According to the Government, the "conspiracy between Abujihaad and Derrick Shareef formed as early as 2003, when Abujihaad and Shareef discussed attacking a U.S. military recruiting station in Phoenix, and continued from 2004 through 2006 when Abujihaad and Shareef further pursued Abujihaad's idea of attacking a U.S. military base in San Diego with a sniper-like attack." Government's Pre-Hearing Memorandum [doc. # 110], at 90.

The fundamental problem with the Government's claim is that it is entirely dependent upon Mr. Shareef's own statements. There simply is no independent evidence that corroborates Mr. Abu-jihaad's participation in a conspiracy with Mr. Shareef in early October 2006. That is made plain from the fact that the Government's opening brief relied solely upon Mr. Shareef's own statements to prove the existence of the conspiracy in early October 2006 (a conspiracy that the Government claims had been hatched in 2004 and lain dormant until revived in October 2006). *See id.* at 90-92. The CW testified that he never discussed with Mr. Abu-jihaad any plans he and Mr. Shareef had made in 2004 to attack military installations; all such information came from Mr. Shareef. And, it is apparent from the recorded conversations that Mr. Abu-jihaad did not speak with Mr. Shareef until October 28, 2006, when Mr. Shareef traveled to Phoenix to meet with Mr. Abu-jihaad. The Government did not introduce any communications between Mr. Abu-jihaad and Mr. Shareef prior to late October 2006, except for a single forwarded email in April 2006, which the Government acknowledges does not prove the existence of a conspiracy between Mr. Shareef and Mr. Abu-jihaad. Indeed, from the record before the Court, there is no indication that Mr. Shareef and Mr. Abu-jihaad spoke at all between 2004 and Mr. Shareef's trip to Phoenix in late October 2006. *See id.* at 16 (Mr. Shareef "only had intermittent contact with" Mr. Abu-jihaad from 2004 through July 2006).

What is worse for the Government is that Mr. Shareef's own recorded statements in early October belie the Government's assertion that there was already an existing conspiracy between Mr. Shareef and Mr. Abu-jihaad. Indeed, as the CW confirmed, the entire purpose of Mr. Shareef traveling to Phoenix on October 28, was to determine whether Mr. Abu-jihaad was willing to support a plan to attack a military installation. Yet, if Mr. Shareef and Mr. Abu-jihaad were already co-conspirators, Mr. Shareef would have had no doubt at all about Mr. Abu-jihaad's position. For

example, in a conversation on October 17, 2006 (AR 004), Mr. Shareef acknowledges that he does not know what Mr. Abu-jihaad's position was at that time and effectively confirms that the two had not spoken about such matters for some time:

> CW: I[']m not talking about inciting anybody Akhi, it's just that we gotta know who was with it and who's not. . . . That's why I wanted you to ask [Mr. Abu-jihaad].
>
> Shareef: He got kids and stuff, man . . . you got kids too, but I mean some people don't, you know, some people once they have children, and . . . .
>
> . . .
>
> He might, you know what I'm sayin' have the intention or desire to wanna do somethin'. . . .
>
> . . .
>
> I don't know how down he is anymore though man.
>
> . . .
>
> I think we can talk to him and see what's up. You know. But I can, I can no longer vouch for him the way I can vouch for myself and say, ok this is how it's goin' down.
>
> . . .
>
> Yeah, but at the same time, at this point I know the brother [Mr. Abu-jihaad] has still got love for it, he still respect it, but I don't know if he's ready to . . . .
>
> . . .
>
> I don't know what to say man. All I can say is if you talk to him and if he down or he ain't down . . . you know.
>
> . . .

13

> CW: So that's, that's my plan. To see what he says about the issues. In a humdallah if he ain[']t down man I won't press the issue.

AR004, at 42, 44-47, 50.

At oral argument on the Government's motion, the Court asked Government counsel directly to identify the independent corroborating evidence on which it relied to show Mr. Abu-jihaad's conspiracy with Mr. Shareef as of early October 2006. The Government acknowledged that it had no evidence of any existing or dormant conspiracy between Mr. Abujihaad and Mr. Shareef before Mr. Shareef's comments to the CW in early October 2006 – that is, the Government has no evidence prior to Mr. Shareef's statements to the CW in early October 2006 that Mr. Abu-jihaad and Mr. Shareef had entered into any conspiracy. As for corroborating evidence independent of Mr. Shareef's statements, the Government also conceded that it had no such evidence before early November 2006, when Mr. Abujihaad began to speak in recorded conversations with the CW and Mr. Shareef. According to the Government, the independent corroborating evidence of a pre-existing conspiracy between Mr. Abu-jihaad and Mr. Shareef is supplied by Mr. Abu-jihaad's willingness in November and December 2006 to provide logistical support for the Shareef-CW plan and by his interest in November and December 2006 in acquiring a weapon or two from the CW. On the basis of the November and December statements from Mr. Abu-jihaad, the Government asks the Court to "infer" (the Government's word) the existence – albeit dormant – of a conspiracy between Mr. Abu-jihaad and Mr. Shareef as of early October 2006.

There may well be cases in which the Court could properly infer based on later conversations among conspirators that they had previously reached the agreement needed to form their conspiracy. This is not one of them. While the evidence shows that in November and December 2006, Mr. Abu-

jihaad expressed support for the CW-Shareef plan, the Court cannot, on the basis of the record created in this case, use Mr. Abu-jihaad's expressed willingness to support a conspiracy in November as evidence that he and Mr. Shareef were already conspiring as of early October. There is simply nothing in Mr. Abu-jihaad's statements in the November and December recorded conversations that would support such an inference. Nor can the Court on the present record infer from Mr. Abu-jihaad's interest in acquiring weapons in November 2006, that he was already conspiring with Mr. Shareef as of early October 2006. Importantly, the CW testified that he never discussed with Mr. Abu-jihaad any pre-existing plans that he and Mr. Shareef may have had. And Mr. Abu-jihaad's statements in November and December are all focused on the CW-Shareef plan, and not on any pre-existing plan, dormant or otherwise.

In sum, having considered both the hearsay statements themselves as well as the evidence independent of those statements, the Court cannot find by a preponderance of the evidence that Mr. Shareef and Mr. Abu-jihaad had entered into a conspiracy as of the time Mr. Shareef made the statements in early October 2006 that the Government seeks to introduce as co-conspirator statements. As a consequence, Mr. Shareef's statements to the CW were not made "during the course" of a conspiracy, as required by Rule 801(d)(2)(E).

If this case presented a close question, the Court might be inclined to let the jury consider this evidence and to make its own determination about its strength and relevance. But with all due respect to Government counsel (who have pursued the motion with commendable candor), this is not a close case. Instead, this case is precisely what the "during the course of" and independent corroboration requirements are designed to catch. Thus, this case is much like *Tellier*, where the only evidence of the defendant's participation in the conspiracy was the hearsay statement itself.

15

There, the Second Circuit held that "[b]ecause there was no independent corroborative evidence of [the defendant's] participation in that conspiracy, the proffered hearsay statement was inadmissible." 83 F.3d at 580. The Court reaches the same conclusion here.

Therefore, the Government's request in its Motion in Limine [doc. # 110] to admit statements under Rule 801(d)(2)(E) is DENIED. In all other respects, the Government's Motion remains pending and the Court will in the future issue rulings on the other issues raised in the motion.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
         Mark R. Kravitz
         United States District Judge

**Dated at New Haven, Connecticut: January 9, 2008.**