UNTIED STATES OF AMERICA      :
     :
     :
v.      :      No. 3:07CR57(MRK)
     :
     :
HASSAN ABU-JIHAAD      :

## MEMORANDUM OF DECISION

In March 2007, Hassan Abu-jihaad was indicted in the District of Connecticut and charged in two counts with providing material support to terrorists in violation of 18 U.S.C. § 2339A and 18 U.S.C. § 2, and with communicating national defense information to persons not entitled to receive it in violation of 18 U.S.C. § 793(d). *See* Indictment [doc. # 6]. Each of these charges stems from the Government's assertion that Mr. Abu-jihaad transmitted a Battle Group document to Babar Ahmad and Azzam Publications, who are also the subjects of criminal charges in this District. *See* Indictment [doc. # 8], No. 3:04cr301 (MRK). Trial of the charges against Mr. Abu-jihaad is currently scheduled to begin on February 25, 2008.

On April 10, 2007, the Government filed a notice [doc. # 34] pursuant to 50 U.S.C. § 1806(c), informing Mr. Abu-jihaad of its intent to use or otherwise disclose evidence obtained or derived from electronic surveillance (collectively, "FISA-derived evidence") conducted under the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. §§ 1801 *et seq.* ("FISA"). The Government later filed an amendment [doc. # 117] to its notice, in which the Government stated its intent to use FISA-derived evidence at pretrial hearings, trial, and other related proceedings.

Mr. Abu-jihaad has now filed a Motion to Suppress [doc. # 124] all FISA-derived evidence, and a Motion for Disclosure of FISA Applications and Orders and for Adversary Hearing on Motion to Suppress [doc. ## 142, 143]. In his suppression motion, Mr. Abu-jihaad argues that: (1) FISA is unconstitutional on its face because it violates the Fourth Amendment; (2) the FISA-derived evidence in this case was unlawfully acquired in violation of the Fourth Amendment; (3) the FISA-derived evidence in this case was acquired in violation of the statutory requirements of FISA; and (4) the Government may have made material misstatements in the FISA applications and affidavits, thereby entitling him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1974). *See* Memorandum in Support of Motion to Suppress FISA Derived Evidence [doc. # 133] ("Defendant's Mem."). In his disclosure and adversary hearing motion, Mr. Abu-jihaad asks to inspect the affidavits, applications, and orders of the Foreign Intelligence Surveillance Court ("FISC") approving the FISA surveillance and requests the Court to schedule an adversary hearing at which the parties may argue the issues raised by Mr. Abu-jihaad's suppression motion. Mr. Abu-jihaad also filed a Supplemental Memorandum in Support of Motion to Suppress FISA Derived Evidence [doc. # 181] in which he provided further detail regarding his constitutional claims. Mr. Abu-jihaad has had access to certain of the FISA-derived evidence that the Government has used in pretrial hearings or that the Government has otherwise disclosed to Mr. Abu-jihaad, but neither he nor his counsel has had access to the FISA applications, supporting papers, or FISC orders.

The Government opposes Mr. Abu-jihaad's motions and pursuant to FISA, asks the Court: (1) to conduct an *in camera* and *ex parte* review of the FISA applications, affidavits, and materials as well as the FISC orders; (2) to find that FISA, as amended, is constitutional; (3) to find that the FISA collection in this case was lawfully authorized and conducted; and (4) to order that none of the

classified documents, nor any classified information, be disclosed to the defense and that such materials remain under seal. In furtherance of the Government's requests, it has submitted both a classified and redacted, unclassified Memorandum in Opposition to the Defendant's Motion for Suppression of FISA Evidence and Motion for Disclosure of FISA Applications, Orders and Related Materials and an Adversary Hearing [doc. ## 160, 161] ("Government's Mem."); an unclassified Declaration and Claim of Privilege of the Attorney General of the United States [doc. # 158]; a classified Declaration of Joseph Billy, Jr., Assistant Director of the Counterterrorism Division of the Federal Bureau of Investigation; a classified declaration of the FBI regarding applicable minimization procedures; certified copies of the classified FISA applications, orders, and related materials ("FISA materials"); and an unclassified proposed order [doc. # 162]. The classified documents were filed through the Court Security Officer, as part of a sealed exhibit for the Court's *in camera* and *ex parte* review under FISA. The unclassified supporting materials were filed on the public record.

The Court is once again grateful to counsel for their excellent submissions. Having carefully reviewed the FISA materials *in camera* and *ex parte* and considered the Fourth Amendment, relevant statutes, and case law, the Court DENIES the Motion to Suppress [doc. # 124], the Motion for Disclosure of FISA Applications and Orders [doc. # 142], and the Motion for an Adversary Hearing on Motion to Suppress [doc. # 143]. As set forth below, the Court concludes that: FISA does not on its face violate the Fourth Amendment; the collection of the FISA-derived evidence in this case did not violate the Fourth Amendment or FISA; Mr. Abu-jihaad is not entitled to review the FISA materials; and there were no misrepresentations or misstatements in the Government's applications or affidavits that would warrant the Court holding a *Franks* hearing.

# I.

FISA sets forth a statutory procedure under which the Executive Branch may collect foreign intelligence information within the United States. Several courts, including the Second Circuit and the Foreign Intelligence Surveillance Court of Review (the "FISA Review Court"), have discussed in detail the history of FISA and its procedures. *See, e.g.*, *In re Sealed Case*, 310 F.3d 717 (Foreign Intelligence Surveillance Ct. Rev. 2002); *United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984). The Court will not rehearse that history in this ruling. A relatively brief statutory overview will suffice for present purposes.

The term "foreign intelligence information" includes information that "relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against . . . actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power [and/or] sabotage or international terrorism by a foreign power or agent of a foreign power." 50 U.S.C. § 1801(e)(1). The term also includes information with respect to a "foreign power or foreign territory that relates to, and if concerning a United States person is necessary to – (A) the national defense of the security of the United States; or (B) the conduct of the foreign affairs of the United States." *Id.* §§ 1801(e)(2), 1821(1).

The definition of "foreign power" is not limited to a foreign government, but also includes, among other things, a "group engaged in international terrorism or activities in preparation therefor." *Id.* §§ 1801(a), 1821(1). An "agent of a foreign power" includes any person who "knowingly engages in sabotage or international terrorism, or activities in preparation therefor, for or on behalf of a foreign power," and anyone who knowingly aids, abets, or conspires with any person to engage in the activities described in the Act. *Id.* §§ 1801(b)(2), 1821(1). "International terrorism" includes

4

activities that "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States," appear intended to intimidate or coerce a civilian population or a government or affect a government by assassination or kidnaping, and occur totally outside the United States or transcend national boundaries. *Id.* §§ 1801(c), 1821(1).[1]

Except for emergency situations in which the Attorney General may authorize electronic surveillance or physical search for up to 72 hours without a court order, FISA requires the Government to obtain an order from the FISC (composed of U.S. District Judges appointed by the Chief Justice of the United States) before engaging in electronic surveillance or physical searches to collect foreign intelligence information. *Id.* §§ 1804(a), 1805(f), 1823(a), 1824(e).[2] The statute also requires substantial review by, and certifications from, the Attorney General or another high-ranking Executive Branch official with national security or defense responsibilities. *Id.* §§ 1804(a)(7) (electronic surveillance), 1823(a)(7) (physical search).[3]

---

[1] FISA specifies that no United States person may be considered a foreign power or agent of a foreign power solely on the basis of activities protected by the First Amendment. 50 U.S.C. §§ 1805(a)(3)(A), 1824(a)(3)(A); *see generally United States v. Rosen*, 447 F. Supp. 2d 538, 549-50 (E.D. Va. 2006); *United States v. Rahman*, 861 F. Supp. 247, 252 (S.D.N.Y. 1994), *aff'd* 189 F.3d 88 (2d Cir. 1999).

[2] Among other things, the application to the FISC must contain a statement of: (1) the nature of the information sought through the electronic surveillance or the foreign intelligence sought through the physical search; (2) the type of communications or activities to be subjected to electronic surveillance; (3) the manner or means by which the electronic surveillance or physical search will be effected and a statement whether physical entry is required to effect the electronic surveillance; (4) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, places, premises, or property specified in the application; and (5) the proposed duration of the electronic surveillance. 50 U.S.C. §§ 1804(a), 1823(a).

[3] The high-ranking official must: certify that the official deems the information sought to be foreign intelligence information; certify that a significant purpose of the surveillance is to obtain foreign intelligence information; certify that such information cannot reasonably be obtained by normal investigative techniques; designate the type of foreign intelligence information being sought

Before the FISC may approve the requested electronic surveillance or physical search, the judge must find, among other things, that: (1) the President has authorized the Attorney General to approve the FISA application; (2) the application has been made by a "Federal officer" and has been approved by the Attorney General; (3) there is probable cause to believe that the target of the electronic surveillance or physical search is a foreign power or an agent of a foreign power, and that (a) the facilities or places at which the electronic surveillance are directed is being used, or are about to be used, by a foreign power or an agent of a foreign power, or (b) the premises or property to be searched is owned, used, possessed by, or in transit to or from an agent of a foreign power or a foreign power; (4) the proposed minimization procedures meet the statutory requirements set forth in 50 U.S.C. § 1801(h) (electronic surveillance) or 50 U.S.C. § 1821(4) (physical search); and (5) the application contains all of the statements and certifications required by § 1804 or § 1823. If the target is a United States person, the FISC judge must also find that the certifications are not clearly erroneous on the basis of the statements made under §§ 1804(a)(7)(E) or 1823(a)(7)(E) and any other information furnished under §§ 1804(d) or 1823(c). *See id.* §§ 1805(a)(1)-(5) (setting forth the necessary findings by the FISC in an order authorizing electronic surveillance), 1824(a)(1)-(5) (same regarding an order authorizing physical search).

Under FISA, electronic surveillance or physical searches targeting a United States person may be approved for up to 90 days, though extensions may be granted if the Government submits

---

according to the categories described in FISA; and include a statement of the basis for the certification that (i) the information sought is the type of foreign intelligence information designated; and (ii) such information cannot reasonably be obtained by normal investigative techniques. 50 U.S.C. §§ 1804(a)(7), 1823(a)(7).

another application to the FISC. *Id.* §§ 1805(e)(1), (2), 1824(d)(1), (2). FISA requires the FISC order authorizing surveillance or searches to specify: the identity (or a description of) the specific target of the collection; the nature and location of each facility or place at which the electronic surveillance will be directed or of each of the premises or property to be searched; the type of information sought to be acquired and the type of communications or activities to be subjected to the electronic surveillance, or the type of information, material, or property to be seized, altered, or reproduced through the physical search; the means by which electronic surveillance will be effected and whether physical entry will be used to effect the surveillance, or a statement of the manner in which the physical search will be conducted; the period of time during which the electronic surveillance or physical search is approved; and the applicable minimization procedures. *Id.* §§ 1805(c)(1)(A)-(F), 1824(c)(1)(A)-(E).[4]

FISA expressly authorizes the use of information obtained or derived from any FISC-authorized electronic surveillance or physical search in a criminal prosecution, so long as the use comports with FISA's requirements, including the requirement for advance authorization by the Attorney General. *Id.* §§ 1806(b), 1825(c). Evidentiary use of FISA-derived evidence is permitted in proceedings before federal, state, and local courts, provided that proper notice is given to the Court and each "aggrieved person" against whom the information is to be used. *Id.* §§ 1806(c)-(d), 1825(d)-(e). Upon receiving notice, the aggrieved person may then move to suppress use of FISA-derived evidence on grounds that the evidence was unlawfully acquired or the electronic surveillance

---

[4] FISA requires the Attorney General to adopt minimization procedures. 50 U.S.C. §§ 1801(h)(1), 1821(4)(A). To fulfill that statutory duty, the Attorney General has adopted standard minimization procedures that apply to every FISA application, which were submitted to the Court for *in camera* review. Each FISC order at issue in this case approved the Attorney General's minimization procedures.

or physical search was not conducted in conformity with an order of authorization or approval. *Id.* §§ 1806(e), 1825(f).

## II.

Mr. Abu-jihaad first argues that FISA is unconstitutional on its face because it violates the Fourth Amendment. In support, he relies heavily upon a recent decision in *Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007). According to *Mayfield*, a Patriot Act amendment to FISA – which permits FISA surveillance if a "significant purpose" of the surveillance is foreign intelligence – now allows the "Executive Branch to bypass the Fourth Amendment in gathering evidence for a criminal prosecution." *Id.* at 1037. Indeed, in that case, the court found that the "primary purpose of the electronic surveillance and physical searching of Mayfield's home was to gather evidence to prosecute him for crimes," *id.* at 1038, and thus that by utilizing FISA, the Government had improperly avoided the probable cause, judicial oversight, notice, and particularity requirements of the Fourth Amendment. *Id.* at 1039-40. Two other courts have expressly rejected the facial arguments embraced by *Mayfield*. *See In re Sealed Case*, 310 F.3d 717; *United States v. Mubayyid*, – F. Supp. 2d –, 2007 WL 3287393 (D. Mass. 2007). The Court is unpersuaded by *Mayfield*[5] and holds – in accordance with *In re Sealed Case* and *Mubayyid*, as well as the Second Circuit's decision in *United States v. Duggan*, 743 F.2d 59 – that FISA is not unconstitutional on its face.

The Second Circuit has already traveled down this path in *Duggan*, where the court upheld the constitutionality of FISA. There, Judge Amalya L. Kearse, writing for a unanimous court, noted that prior to enactment of FISA, virtually every court had concluded that the President had the

---

[5] Given *Mayfield*'s factual findings about the primary purpose of the Government surveillance in that case, it is not at all clear why the *Mayfield* court held FISA unconstitutional on its face.

inherent power, as an exception to the Fourth Amendment, to conduct warrantless electronic surveillance to collect foreign intelligence information. *Duggan*, 743 F.2d at 72. The court further noted that in *United States v. United States District Court (Keith, J.)*, 407 U.S. 297, 308 (1972), the Supreme Court expressly declined to address the issue. *Duggan*, 743 F.2d at 72; *see Keith*, 407 U.S. at 321-22 ("We have not addressed, and express no opinion as to, the issues which may be involved with respect to activities of foreign powers or their agents."). However, *Duggan* explained that the Supreme Court in *Keith* "had made clear that the requirements of the Fourth Amendment may change when differing governmental interests are at stake and . . . that the governmental interests presented in national security investigations differ substantially from those presented in traditional criminal investigations." *Duggan*, 743 F.2d at 72 (citation omitted); *see Keith*, 407 U.S. at 321-22. In fact, the Supreme Court in *Keith* had observed that

> domestic security surveillance may involve different policy and practical considerations from the surveillance of 'ordinary crime.' The gathering of security intelligence is often long range and involves the interrelation of various sources and types of information. The exact targets of such surveillance may be more difficult to identify than in surveillance operations against many types of crime specified in Title III. Often, too, the emphasis of domestic intelligence gathering is on the prevention of unlawful activity or the enhancement of the Government's preparedness for some possible future crisis or emergency. Thus, the focus of domestic surveillance may be less precise than that directed against more conventional types of crime.

> Given those potential distinctions between Title III criminal surveillances and those involving the domestic security, Congress may wish to consider protective standards for the latter which differ from those already prescribed for specified crimes in Title III. Different standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens. For the warrant application may vary according to the governmental interest to be enforced and the nature of citizen rights deserving protection.

*Keith*, 407 U.S. at 322-23 (quoted in *Duggan*, 743 F.2d at 73).

"Against this background," *Duggan* explained, Congress enacted FISA and "[i]n constructing this framework, Congress gave close scrutiny to departures from those Fourth Amendment doctrines applicable in the criminal-investigation context in order to ensure that the procedures established in FISA are reasonable . . . ." *Duggan*, 743 F.2d at 73 (quotation and alteration omitted). The FISA procedures represented, in the Second Circuit's view, "a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information." *Id.* *Duggan* focused specifically on FISA's requirement that the FISC find probable cause to believe that the target is a foreign power or agent of a foreign power, that the place where the surveillance is to be directed is being used by a foreign power or its agent, and that (for a United States person) the Executive Branch's certifications are not clearly erroneous and that the application properly proposes to minimize the intrusion. *Id.* at 73-74. Concluding that "these requirements provide an appropriate balance between the individual's interest in privacy and the government's need to obtain foreign intelligence information," *Duggan* held that FISA did not violate the Fourth Amendment. *Id.* at 74.

The Court has described *Duggan* at length because one might have supposed that it would put to rest the question of FISA's constitutionality – at least in the Second Circuit.[6] However, Mr.

---

[6] As the Government notes, every court to consider the constitutionality of FISA, with the exception of *Mayfield*, has found FISA to comport with the Fourth Amendment. *See, e.g.*, *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005); *In re Grand Jury Proceedings*, 347 F.3d 197, 206 (7th Cir. 2003) ("All courts to consider the issue before FISA was amended by the USA Patriot Act of 2001 have found FISA constitutional."); *United States v. Johnson*, 952 F.2d 565, 573 (1st Cir. 1991); *United States v. Pelton*, 835 F.2d 1067, 1075 (4th Cir. 1987); *United States v. Cavanagh*, 807 F.2d 787, 790 (9th Cir. 1987); *United States v. Jayyousi*, No. 04-60001-cr (Cooke), 2007 WL 851278, at *1 (S.D. Fla. Mar. 15, 2007); *United States v. Benkahla*, 437 F. Supp. 2d 541, 555 (E.D. Va. 2006); *United States v. Marzook*, 435 F. Supp. 2d 778, 786 (N.D. Ill. 2006); *United States v. Sattar*, No. 02cr395 (JGK), 2003 WL 22137012, at *13-*15 (S.D.N.Y. Sept. 15, 2003); *Global Relief Found., Inc. v. O'Neill*, 207 F. Supp. 2d 779, 807 (N.D. Ill. 2002); *United States v. Nicholson*,

Abu-jihaad points out that the Patriot Act amended FISA in 2001.[7] Before the Patriot Act, FISA

required the high-ranking Executive Branch official to certify that "the purpose" of the surveillance

was to obtain foreign intelligence information. 50 U.S.C. § 1804(a)(7) (2000). Many courts had

construed that provision to mean that "[a]lthough evidence obtained under FISA subsequently may

be used in criminal prosecutions, the investigation of criminal activity cannot be the primary purpose

of the surveillance." *Johnson*, 952 F.2d at 572 (citations omitted); *but see United States v.

Sarkissian*, 841 F.2d 959, 964-65 (9th Cir. 1988) (declining to decide whether FISA requires

application of a "primary purpose" test and "refus[ing] to draw too fine a distinction between

criminal and intelligence investigations"). As the FISA Review Court recounts at length in *In re

Sealed Case*, this "primary purpose" test appears to have originated in a Fourth Circuit decision in

*United States v. Truong Dinh Hung*, 629 F.2d 908, 915 (4th Cir. 1980), and it was repeated in other

decisions and apparently embraced by the Government. *See In re Sealed Case*, 310 F.3d at 725-27

(cases cited therein).

In October 2001, Congress amended FISA to change "the purpose" language of § 1804(a)(7)

to "a significant purpose."[8] According to Mr. Abu-jihaad (and *Mayfield*, for that matter) the changes

---

955 F. Supp. 588, 590 n.3 (E.D. Va. 1997) (collecting cases).

[7] *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001).

[8] The Patriot Act also expressly approved of consultation and coordination between intelligence and law enforcement officials. Thus, the Patriot Act added a section allowing "Federal officers who conduct electronic surveillance to acquire foreign intelligence information" to "consult with Federal law enforcement officers to coordinate efforts to investigate or protect against" attack or other hostile acts. 50 U.S.C. § 1806(k)(1). Moreover, such consultation and coordination "shall not preclude" the Government's certification that a significant purpose of the surveillance is to obtain foreign intelligence information, or a court order approving the surveillance. *Id.* § 1806(k)(2).

The original Patriot Act had a "sunset" provision. However, in the USA Patriot Improvement

effected by the Patriot Act mean that *Duggan*'s holding that FISA is constitutional is no longer good law. The Court disagrees for several reasons.

First, the Court does not believe that the "primary purpose" requirement was important to the *Duggan* court in upholding the constitutionality of FISA. In fact, *Duggan* never mentioned the "primary purpose" requirement in the portion of its decision considering the constitutionality of FISA, even though the court explicitly mentioned other requirements of FISA in determining that Congress had struck a constitutionally permissible balance in enacting FISA. *See Duggan*, 743 F.2d at 73-74.

*Duggan* did not even advert to anything like a "primary purpose" requirement until later in its decision, in considering the Government's compliance with FISA. *See id.* at 77. There, in recounting various provisions of FISA, *Duggan* stated: "The requirement that foreign intelligence information be the *primary objective* of the surveillance is plain not only from the language of § 1802(b) but also from the requirements in § 1804 as to what the application must contain." *Id.* (emphasis added). The court went on immediately thereafter to state that "[o]nce this certification is made, however, it is, under FISA, subjected to only minimal scrutiny by the courts." *Id.* Having reviewed the FISA submissions *in camera*, *Duggan* concluded that the FISA surveillance in that case was "instituted as a part of an investigation of international terrorism"; in short, the court held, the "purpose of the surveillance in this case, both initially and throughout, was to secure foreign intelligence information and was not, as the defendants assert, directed towards criminal investigation or the institution of a criminal prosecution." *Id.* at 78 (quotation marks and alteration

---

and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 (2006), Congress made the significant purpose amendment permanent.

omitted).  Importantly, however, *Duggan* concluded its discussion of FISA by "emphasiz[ing] that an otherwise valid FISA surveillance is not tainted simply because the government can anticipate that the fruits of such surveillance may later be used, as allowed by § 1806(b), as evidence in a criminal trial."  *Id.*

> Congress recognized that in many cases the concerns of the government with respect to foreign intelligence will overlap those with respect to law enforcement.  Thus, one Senate Report noted that
>
>> [i]ntelligence and criminal law enforcement tend to merge in [the area of foreign counterintelligence investigations] . . . .
>
> In sum, FISA authorizes surveillance for the purpose of obtaining foreign intelligence information . . . and the fact that domestic law enforcement concerns may also have been implicated did not eliminate the government's ability to obtain a valid FISA order.

*Id.* (citation omitted).

Based upon the foregoing statements in *Duggan*, the Court does not believe that the "primary purpose" requirement (assuming it was even adopted in *Duggan*) was integral to that court's Fourth Amendment holding or that the Second Circuit would come out any differently after the Patriot Act amendments.  *See Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *11 (reaching same conclusion regarding the First Circuit's decision in *Johnson*).  As *Duggan* put it: "[T]he fact that domestic law enforcement concerns may also [be] implicated [by the requested surveillance] do[es] not eliminate the government's ability to obtain a valid FISA order."  743 F.2d at 78; *Ning Wen*, 477 F.3d at 898 ("That the agents may have known that they were likely to hear evidence of domestic crime does not make the interception less reasonable than if they were ignorant of this possibility.").

Second, and in any event, contrary to *Mayfield*, the Court does not believe that the statutory change from "purpose" (even assuming that meant "primary purpose") to "significant purpose" is of

constitutional significance.[9]  As the Supreme Court has repeatedly reminded us, the "touchstone of the Fourth Amendment is reasonableness." *See, e.g.*, *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 2201 n.4 (2006); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 1947 (2006); *United States v. Knights*, 534 U.S. 112, 118-19 (2001).  And as *Duggan* pointed out, FISA incorporates numerous safeguards to achieve "a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information."  *Duggan*, 743 F.2d at 73; *see Keith*, 407 U.S. at 322-23 ("Different standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens."); *In re Sealed Case*, 310 F.3d at 737 ("It is important to note that while many of FISA's requirements for a surveillance order differ from those in Title III, few of those differences have any constitutional relevance.").  Those safeguards are not diminished by the change in language effected by the Patriot Act.

For one, even after the Patriot Act amendments, no surveillance or physical search can occur until a neutral and independent judicial officer has reviewed the Government's filings and issued a court order approving the requested action.  *See Duggan*, 743 F.2d at 73-74.  For another, FISA requires the Government to demonstrate – and the FISC to find – that there is probable cause to

---

[9] The Court hereby adopts the construction of the phrase "significant purpose" set forth in *In re Sealed Case*.  *See* 310 F.3d at 735 ("The important point is – and here we agree with the government – the Patriot Act amendment, by using the word 'significant,' eliminated any justification for the FISA court to balance the relative weight the government places on criminal prosecution as compared to other counterintelligence responses. . . . Of course, if the court concluded that the government's sole objective was merely to gain evidence of past criminal conduct – even foreign intelligence crimes – to punish the agent rather than halt ongoing espionage or terrorist activity, the application should be denied.").

believe that the target of the surveillance is a foreign power or agent of a foreign power and that the places to be searched or at which surveillance will take place will be used by the foreign power or its agent. *See, e.g.*, *United States v. Falvey*, 540 F. Supp. 1306, 1313 (E.D.N.Y. 1982) (finding that the FISA probable cause standard fully satisfies Fourth Amendment requirements) ("It provides an effective external control on arbitrary executive action and is a fundamental safeguard for the civil liberties of the individual because it requires that a federal district court judge – not the Executive branch – make a finding of probable cause to believe that the target of surveillance is an agent of a foreign power.") (quotation marks omitted). While, as Mr. Abu-jihaad points out, there are certainly differences between the probable cause required by FISA and that required by Title III, the Court agrees with the recent decision by the District of Massachusetts that the differences are "reasonably adapted to the peculiarities of foreign intelligence gathering." *Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *9 (quotation marks omitted); *see also Ning Wen*, 477 F.3d at 898 ("[T]he 'probable cause' of which the fourth amendment speaks is not necessarily probable cause to believe that any law is being violated. . . . Probable cause to believe that a foreign agent is communicating with his controllers outside our borders makes an interception reasonable."). Moreover, the requirement that the FISC judge examine closely the Government's showing that the proposed target of the surveillance is an agent of a foreign power and that the premises to be targeted are being used by the agent, adequately addresses particularity requirements. *See Duggan*, 743 F.2d at 73; *Jayyousi*, 2007 WL 851278, at *6. Finally, as *Duggan* also emphasized, FISA contains explicit requirements for

minimization.  *See, e.g.*, *Satttar*, 2003 WL 22137012, at *15 (discussing minimization requirements of FISA and rejecting defendant's suppression arguments).[10]

That the Government may now seek, and a FISC may approve, surveillance or physical searches when only "a significant purpose" – rather than the "primary purpose" – is collection of foreign intelligence information, does not alter the constitutional calculus.  The focus of a FISA application and a FISC order remains on foreign intelligence gathering.  Even as amended, "FISA is meant to take into account the differences between ordinary criminal investigations to gather evidence and foreign counterintelligence investigations to uncover and monitor clandestine activities."  *Sarkissian*, 841 F.2d at 965 (quotation marks and alteration omitted); *see In re Sealed Case*, 310 F.3d at 744 ("The government's concern with respect to foreign intelligence crimes . . . is overwhelmingly to stop or frustrate the immediate criminal activity."); *see also Cassidy v. Chertoff*, 471 F.3d 67, 82 (2d Cir. 2006) ("Preventing or deterring large-scale terrorist attacks present problems that are distinct from standard law enforcement needs and indeed go well beyond them."); *MacWade v. Kelly*, 460 F.3d 260, 271 (2d Cir. 2006) ("Preventing a terrorist from bombing the subways constitutes a special need that is distinct from ordinary post hoc criminal investigation.").  Thus, the Government still must show that the target is a foreign power or an agent of a foreign power.  50 U.S.C. §§ 1801, 1821; *see In re Sealed Case*, 310 F.3d at 739 ("FISA surveillance would

_____

[10] In *Mayfield*, the court noted that there were differences in the way in which Title III and FISA dealt with the issue of notice to the target of surveillance.  *See Mayfield*, 504 F. Supp. 2d at 1039 ("FISA targets never learn that their homes or offices have been searched or that their communications have been intercepted.").  In this case, however, Mr. Abu-jihaad has received notice that he was the subject of a FISA surveillance, and therefore his standing to complain of a lack of notice to others is questionable, at best.  To the extent Mr. Abu-jihaad contests the constitutionality of FISA's provisions for *in camera* and *ex parte* review, the Court addresses those claims below and rejects them.

not be authorized against a target engaged in purely domestic terrorism because the government would not be able to show that the target is acting for or on behalf of a foreign power."). For constitutional purposes, it suffices that the request for a FISA order must be adequately justified without reference to the possibility that domestic crimes will surface. *See Ning Wen*, 477 F.3d at 899; *In re Sealed Case*, 310 F.3d at 744.

Finally, the fact that a foreign intelligence investigation may result in a criminal process and that the concerns of foreign intelligence gatherers and law enforcement may often overlap or merge, is not a reason to find FISA unconstitutional, as *Duggan* quite properly recognizes. *See Duggan*, 743 F.2d at 78. "'International terrorism,' by definition, requires the investigation of activities that constitute crimes." *Sarkissian*, 841 F.2d at 965; *accord In re Sealed Case*, 310 F.3d at 735. Even as amended, therefore, the balance Congress struck between an individual's important interest in privacy and the Government's legitimate need to obtain foreign intelligence information remains reasonable and one that complies with the Fourth Amendment. *See In re Sealed Case*, 310 F.3d at 746 ("FISA as amended is constitutional because the surveillances [and searches] it authorizes are reasonable."); *Ning Wen*, 477 F.3d at 898 (rejecting Fourth Amendment challenge to FISA, as amended by the Patriot Act); *Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *12 (FISA, as amended, is not "unreasonable or otherwise violat[ive of] the Constitution"); *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 2011319, at *5-*6 (N.D. Tex. July 11, 2007) ("This court concurs [with *In re Sealed Case*]. The amended version of FISA does not violate the Fourth Amendment."); *see also ACLU v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 32 & n.12 (D.D.C. 2003) (discussing *In re Sealed Case* decision outside the Fourth Amendment context).

Needless to say, the issues raised by Mr. Abu-jihaad are vitally important – not just for him, but for all of our citizens and the Nation as a whole. This Court's conclusion that FISA, as amended, is constitutional will certainly not be the last word on these key issues. It is conceivable that the Second Circuit eventually will re-think its decision in *Duggan* in light of the Patriot Act amendments to FISA. However, until it does so, this Court will apply *Duggan*'s holding to FISA, even as amended by the Patriot Act.

### III.

Before considering the legality of the FISA surveillance in this case, the Court must address Mr. Abu-jihaad's twin requests to inspect the applications and supporting papers the Government submitted to the FISC (as well as the court orders authorizing the FISA surveillance) and to hold a *Franks* hearing. The Court denies both requests.

### A.

FISA provides that if "the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States" the district court "shall, notwithstanding any other law . . . review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance [or physical search] as may be necessary to determine whether the surveillance [or physical search] of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. §§ 1806(f), 1825(g) (italics added). If the Attorney General files such an affidavit, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance [or physical search] *only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or the physical search]*." *Id.* §§ 1806(f), 1825(g) (emphasis added).

In this case, Attorney General Michael B. Mukasey filed the required affidavit, certifying to the Court that disclosure of the FISA submissions and orders in this case would harm the national security of the United States. *See* Declaration and Claim of Privilege of the Attorney General of the United States [doc. # 158]. Therefore, under FISA, disclosure is required only if necessary for an accurate determination of the legality of the surveillance.

Courts have uniformly held that *ex parte* and *in camera* inspections are the "rule" under FISA, *Duggan*, 743 F.2d at 78, and that disclosures and adversary hearings are the "exception, occurring *only* when necessary." *United States v. Belford*, 692 F.2d 141, 147 (D.C. Cir. 1982); *see, e.g.*, *United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000); *Rosen*, 447 F. Supp. 2d at 546; *Sattar*, 2003 WL 22137012, at *6. Indeed, the Government represents in its brief, backed up by numerous citations, that "*[e]very* federal court of appeals and district court in this Circuit and elsewhere that has addressed a motion to disclose FISA materials or suppress FISA evidence has been able to reach a conclusion as to the legality of the FISA collection based on an *in camera* and *ex parte* review of the FISA materials submitted by the United States." Government's Mem. at 23 (citing cases).

Courts have also uniformly held that such review procedures do not deprive a defendant of due process. *See, e.g.*, *Damrah*, 412 F.3d at 624-25; *United States v. Badia*, 827 F.2d 1458, 1464 (11th Cir.1987); *Duggan,* 743 F.2d at 78; *Belfield*, 692 F.2d at 148; *United States v. Isa*, 923 F.2d 1300, 1306-07 (8th Cir. 1991). It is true, as this Court observed in the context of a ruling regarding the Classified Information Protection Act, *see* Ruling & Order [doc. # 101], that defense counsel is surely at a disadvantage by not being able to review the materials that they believe may violate their client's rights. However, in devising the procedures that govern court review of FISA materials,

Congress made a "thoroughly reasonable," *Belfield*, 692 F.2d at 148, effort to balance the competing rights and interests of defendants and the Government.

Court review of the FISA materials in this case is relatively straightforward and not complex. *See Taglianetti v. United States*, 394 U.S. 316, 317-18 (1969) (explaining that the district court need not hold an adversary proceeding and provide full disclosure to determine the lawfulness of surveillance); *Giordano v. United States*, 394 U.S. 310, 313 (1969) (same); *Belfield*, 692 F.2d at 147. Moreover, disclosure is permissible, even under FISA, if necessary for an accurate determination of the legality of the surveillance. In *Duggan*, the Second Circuit suggested that the need for disclosure might arise if a judge's initial review of the Government's submissions "revealed potential irregularities such as possible misrepresentation of fact, vague identification of the persons to be surveilled or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order." *Duggan*, 743 F.2d at 79 (quotation marks and alteration omitted).

The Court assures Mr. Abu-jihaad and his counsel that the Court has conducted a careful, thorough, and independent review of each of the Government's submissions and each FISC order, with the requirements of the Constitution, the statute, and *Duggan* fixed firmly in mind. The Court has read and re-read each submission and order. Having done so, the Court is satisfied that disclosure and an adversary hearing are not required in this case. The Court is able to make a determination of the legality of the surveillance on the basis of the materials submitted to the Court *ex parte* and *in camera*. *See, e.g.*, *Sattar*, 2003 WL 22137012, at *6-*7.[11]

---

[11] Nor does the Court find that the requirements of either due process or *Brady v. Maryland*, 373 U.S. 83 (1963), require disclosure of the FISA materials. *See* 50 U.S.C. §§ 1806(g), 1825(h); *see also United States v. Thomson*, 752 F. Supp. 75, 82-83 (W.D.N.Y. 1990); *United States v.*

## B.

Mr. Abu-jihaad also asserts that he is entitled to a *Franks* hearing because there may be misstatements in the Government's submissions in support of the FISA surveillance. Since defense counsel has not had access to the Government's submissions they – quite understandably – can only speculate about their contents. In particular, Mr. Abu-jihaad speculates that the FISA applications and supporting documents included, or were founded upon, information about the Battle Group document that the defense contends is misleading or false.

In *Duggan*, the Second Circuit stated that to be entitled to a *Franks* hearing in connection with a FISA surveillance, a defendant "would be required to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the application and that the allegedly false statement was necessary to the FISA Judge's approval of the application." *Duggan*, 743 F.2d at 77 n.6 (quotation marks omitted); *see Franks*, 438 U.S. at 155-56; *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000); *United States v. Nakouzi*, No. 3:05cr154 (MRK), 2005 WL 3211208, at *5-*6 (D. Conn. Nov. 30, 2005) (discussing requirements of *Franks*); *see also* 50 U.S.C. § 1806(g) (providing that the suppression remedy is to be applied "in accordance with the requirements of law").

Having reviewed the Government's FISA submissions with care and being ever mindful of Mr. Abu-jihaad's concerns regarding use (or rather, misuse) of the Battle Group document, the Court has little difficulty concluding that the *Franks* standard is not even remotely met in this case. The Court does not find any misstatements in the Government's detailed submissions to the FISC, let alone the substantial preliminary showing of deliberate falsehood or reckless disregard of the truth

*Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa. 1989).

that would warrant a *Franks* hearing. *See, e.g.*, *Damrah*, 412 F.3d at 625 ("Even assuming that *Franks* applies to FISA applications and orders, Damrah's *Franks* attack was non-specific and unsupported."); *Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *2 (rejecting defendant's *Franks* argument); *Hassoun*, 2007 WL 1068127, at *4 (same). In particular, the Court finds that there are no misstatements in the FISA submissions regarding the Battle Group document. Accordingly, Mr. Abu-jihaad is not entitled to a *Franks* hearing.

## IV.

The Court is thus brought to Mr. Abu-jihaad's final argument – that the surveillance in this case violated the Fourth Amendment and failed to comply with the statutory requirements of FISA. Here, too, defense counsel can only speculate about the basis for the Government's request for FISA surveillance. That speculation centers on the defense contention that the Government's submissions could not possibly have demonstrated any "ongoing connection" between Mr. Abu-jihaad, a United States citizen, and any "foreign power," as defined in FISA. Therefore, the argument continues, the Government's evident and principal purpose in conducting the FISA surveillance in this case was not to gather "foreign intelligence information," but rather to collect information to be used in connection with the criminal prosecution of Mr. Abu-jihaad regarding the Battle Group document. *See* Defendant's Mem. at 11-13. Having reviewed the Government submissions and FISC orders at length, the Court rejects Mr. Abu-jihaad's arguments and speculations as unfounded and further concludes that the FISA surveillance in this case complied with both the statute and the Fourth Amendment.

*Duggan* sets forth the standard that a reviewing court should apply in assessing a FISA application:

Once this certification [from a high-ranking Executive Branch official] is made, however, it is, under FISA, subjected to only minimal scrutiny by the courts. Congress deemed it a sufficient check in this regard to require the FISA Judge (1) to find probable cause to believe that the target of the requested surveillance is an agent of a foreign power; (2) to find that the application is complete and in proper form; and (3) when the target is a United States person, to find that the certifications are not "clearly erroneous." The FISA Judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information. Further, *Congress intended that, when a person affected by a FISA surveillance challenges the FISA Court's order, a reviewing court is to have no greater authority to second-guess the executive branch's certifications than has the FISA Judge . . . .*

*Duggan*, 743 F.2d at 77 (emphasis added); *accord In re Grand Jury Proceedings*, 347 F.3d 197, 205 (7th Cir. 2003) ("In examining the adequacy of the FISA applications, we conduct the same review that the FISA court conducted."); *Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *3; *Sattar*, 2003 WL 22137012, at *7; *Rahman*, 861 F. Supp. at 251. The Court has applied this standard to its review of the Government's submissions and the FISC orders in this case.

Having reviewed those submissions and orders, the Court is satisfied that there was probable cause to believe that the target of the FISA surveillance in question was an agent of a foreign power, as defined in FISA, that the application and supporting papers were complete, thorough, and fully in accordance with FISA requirements, and that the certifications by the high-ranking Executive Branch officials were not clearly erroneous. In each instance, the Government's submissions were quite detailed and complete; they described at length the facts supporting the Government's assertion that there was probable cause to believe that the target of the FISA surveillance was an agent of a foreign power and those supporting the Government's certification that a significant purpose of the surveillance was to gather foreign intelligence information. The target is described with particularity, as is the basis for believing that the facilities at which electronic surveillance would

occur was being used, or about to be used, by the target and that the premises or property to be searched contained foreign intelligence information that was owned, used, possessed by, or in transit to or from the target. The submissions, and court orders, also contain detailed information regarding the appropriate minimization techniques to be used; affidavits and other materials submitted in connection with the suppression motion also set forth the actions taken during the surveillance to comply with those minimization requirements.

As a result, and substantially for the reasons set forth by the Government in the redacted portions of its memorandum, the Court has little difficulty concluding that the FISC had a proper basis for finding probable cause to believe that the target was an agent of a foreign power, the statutory requirements were fully satisfied, the Government's certifications were not clearly erroneous on the basis of the information provided in the certifications and other FISA materials, a significant purpose of the FISA surveillance and collection was to obtain foreign intelligence information, and proper minimization requirements were implemented. *See, e.g.*, *Duggan*, 743 F.2d at 77; *In re Grand Jury Proceedings*, 347 F.3d at 205; *Mubayyid*, – F. Supp. 2d at –, 2007 WL 3287393, at *3; *Hassoun*, 2007 WL 1068127, at *3; *Rosen*, 447 F. Supp. 2d at 546; *Sattar*, 2003 WL 22137012, at *7; *Bin Laden*, 126 F. Supp. 2d at 286; *Rahman*, 861 F. Supp. at 251; *Kevork*, 634 F. Supp. at 1017. Therefore, the Court concludes that the FISA surveillance and collection in this case were lawfully authorized and conducted, in accordance with the requirements of FISA and the Fourth Amendment. The Court's specific findings are set forth in the conclusion of this decision.[12]

---

[12] In view of the Court's conclusions, it need not, and does not, reach the other arguments advanced by the Government, including whether the "good faith" exception to the exclusionary rule applies in this case.

# V.

The Court DENIES Defendant's Motion to Suppress [doc. # 124], Motion for Disclosure of FISA Applications and Orders [doc. # 142], and Motion for Adversary Hearing on Motion to Suppress [doc. # 143]. The Court concludes that FISA, as amended, 50 U.S.C. §§ 1801-1811, 1821-1829, is constitutional under the Fourth Amendment. Furthermore, having reviewed the Government's submissions and the FISC orders *in camera* and *ex parte*, the Court further finds that the FISA surveillance and collection in this case were lawfully authorized and conducted, in accordance with the Fourth Amendment and FISA. Specifically, the Court finds that:

1.  The President has authorized the Attorney General to approve applications for electronic surveillance and physical search to the Foreign Intelligence Surveillance Court ("FISC"). 50 U.S.C. §§ 1805(a)(1), 1824(a)(1).

2.  Each application at issue was made by a Federal officer and approved by the Attorney General, as defined under FISA, 50 U.S.C. §§ 1801(g), 1821(1). 50 U.S.C. §§ 1805(a)(2), 1824(a)(2).

3.  Each application contained facts establishing probable cause to believe that, at the time the application was submitted to the FISC, the target of the FISA collection was an agent of a foreign power, as defined by 50 U.S.C. § 1801(b)(2)(E), and any United States person targeted was not considered to be an agent of a foreign power "solely upon the basis of activities protected by the first amendment to the Constitution of the United States." 50 U.S.C. §§ 1805(a)(3)(A), 1824(3)(A).

4.  Each application contained facts establishing probable cause to believe that, at the time the application was submitted to the FISC, each facility or place at which electronic surveillance was to be directed was being used or was about to be used by the targeted agent of a foreign power; each premises or property to be searched was owned by, used by, possessed by, or in transit to or from the target; and each premises or property to be searched contained foreign intelligence information. *See* 50 U.S.C. §§ 1805(a)(3)(B), 1823(a)(4)(B), 1824(a)(3)(B).

5.  The minimization procedures included with each application and order of the FISC met the requirements of 50 U.S.C. § 1801(h). 50 U.S.C.

§§ 1805(a)(4), 1824(a)(4). The Government appears to have complied in good faith with these minimization procedures in conducting the surveillance and collection at issue, and therefore, the surveillance and collection was lawfully conducted.

6.   The applications contained all of the statements and certifications required by 50 U.S.C. §§ 1804 and 1823, and none of the certifications made pursuant to 50 U.S.C. §§ 1804(a)(7) and 1823(a)(7) was clearly erroneous on the basis of the facts contained within the certification and any other information furnished in the application pursuant to 50 U.S.C. §§ 1804(d) and 1823(c). 50 U.S.C. §§ 1805(a)(5), 1824(a)(5).

7.   Each of the orders issued by the FISC satisfied the requirements of 50 U.S.C. §§ 1805(b) and 1824(b).


The Government shall maintain all FISA materials under seal so that they can be provided, if needed, to the Court of Appeals for its review.


IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: January 24, 2008.**