# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | No. 3:07CR57(MRK) |
| | : | |
| | : | |
| HASSAN ABU-JIHAAD | : | |

## RULING AND ORDER

The Government has moved to admit at trial certain statements against the defendant Hassan Abu-jihaad under Rule 801(d)(2)(A) of the *Federal Rules of Evidence* and to rely on other act evidence under Rule 404(b). *See* Government's Motion in Limine Pursuant to Federal Rules of Evidence 801(d)(2)(E) and 801(d)(2)(A); Notice of Intention to Introduce Certain Evidence of Intent; and Notice of Intention to Rely on Other Act Evidence Pursuant to Rule 404(b) ("Government's Motion in Limine") [doc. # 110]. The Court has previously ruled on the Government's request to admit certain evidence under the co-conspirator exception, Rule 801(d)(2)(E). *See* Memorandum of Decision [doc. # 173]. The Court assumes familiarity with that ruling.

## I. Rule 404(b)

The Court will address the Government's Rule 404(b) arguments first. Under Rule 404(b), the Government may introduce evidence of a defendant's other crimes, wrongs, or acts if that evidence is relevant for a reason other than to show criminal propensity or character and if the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 404(b); Fed. R. Evid. 403; *see, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 685 (1988); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993). A district court must ensure

that the evidence is: (1) advanced for a proper purpose; (2) relevant to the crime for which the defendant is on trial; (3) more probative than prejudicial; and (4), if requested, admitted with a limiting instruction to the jury. *See United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990). The Second Circuit evaluates such evidence under an "'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)); *see United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006). Moreover, in the Second Circuit, other act evidence may be admitted (depending upon the evidence and the purpose of the offer) even if the "evidence involved a subsequent rather than a prior act." *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998); *accord United States v. Rutkoske*, 506 F.3d 170, 178 (2d Cir. 2007) (approving the admission of other act evidence occurring four years after the events at issue at trial); *United States v. Bibo-Rodriguez,* 922 F.2d 1398, 1400 (9th Cir. 1991) ("By its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts. We have specifically allowed prior act evidence to prove knowledge. Moreover, we [have also] allowed subsequent act evidence to prove intent.") (citation omitted); *Ramirez*, 894 F.2d at 569 ("[W]e decline Ramirez's invitation to adopt a *per se* rule that subsequent similar act evidence inherently lacks relevancy. Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility.").

At oral argument on January 24, 2008, the Government informed the Court that it did not seek to admit in its case-in-chief any of the other act evidence detailed in its motion in limine, unless Mr. Abu-jihaad's counsel, in their cross-examination of Government witnesses, opened the door to such evidence. In light of the Government's position, the Court believes that the prudent course is

to reserve on whether to admit any or all of the other act evidence until the Government's rebuttal case, unless the Government informs the Court that it believes defense counsel has opened the door to such evidence during the Government's case-in-chief. At that time, the Court will be in a better position to identify the particular issues other than propensity that the Government seeks to address by way of the other act evidence, and therefore will be in a better position to weigh probative value and unfair prejudice. *See, e.g.*, *Ramirez*, 894 F.2d at 569 ("The district court allowed the similar act evidence against Ramirez during the government's rebuttal and after Ramirez put knowledge in issue by his testimony."); *United States v. Alessi*, 638 F.2d 466, 477 (2d Cir. 1980) ("We have instructed that normally evidence of a defendant's prior conviction introduced to show knowledge or intent should not be admitted until the conclusion of the defendant's case, since by that time the court is in a better position to determine whether knowledge or intent is truly a disputed issue and whether the probative value of the evidence outweighs the risk of unfair prejudice."); *United States v. Danzey*, 594 F.2d 905, 912 (2d Cir. 1979) ("[I]t is usually preferable for the trial court to await the conclusion of the defendant's case before admitting similar act evidence . . . ."); *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978) (same).

## II.  Rule 801(d)(2)(A)

That leaves the issue of admissions under Rule 801(d)(2)(A) of the *Federal Rules of Evidence*. The Government seeks to admit various oral statements made by Mr. Abu-jihaad in November and December 2006. For more background regarding the events that led to those statements, the reader is referred to the Court's Memorandum of Decision [doc. # 173]. According to the Government's Listing of Evidence Implicated By its Motion in Limine and Identification of the Evidentiary Basis Pursuant to Which It Seeks Admission of That Evidence (the "Government

Listing") [doc. # 146], the Government seeks to introduce the following recorded statements by Mr. Abu-jihaad as admissions under Rule 801(d)(2)(A): November 11 (AR008, AR009, AR010, AR011); November 16 (AR016, AR017); November 19 (CST Recording); November 20 (CST Recording); November 21 (AR020); and December 8, 2006 (AR032, AR033, AR034, AR035). The statements the Government would like to introduce as admissions cover the following subjects: (1) Mr. Abu-jihaad's contacts and familiarity with the Azzam website; (2) his alleged interest in or penchant for secrecy and communicating in code; (3) statements concerning his ability to provide information to support Mr. Shareef's plan; and (4) his reaction to the arrest of Derrick Shareef.

At argument, the Court and counsel agreed that the Court would address each subject area, and then counsel would confer regarding the contents of specific conversations in order to conform with the Court's ruling. Counsel also agreed to discuss whether the defense required any additional statements to be admitted in order to ensure completeness. *See* Fed. R. Evid. 106. If counsel are unable to agree on the contents of the conversations to be introduced into evidence, they may raise any issues with the Court before trial. The Court made clear that under no circumstances would the Government be permitted to introduce portions of conversations that would undermine in any way the Court's previous ruling on the co-conspirator exception. *See* Memorandum of Decision [doc. # 173]. The Court also indicated at argument that counsel should confer regarding an appropriate cautionary instruction for any statements that the Court concludes are admissible, because the Court will not admit any such statements without an appropriate cautionary instruction. *See* Fed. R. Evid. 105.

Rule 801(d)(2) provides that a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statements in either an individual or a representative capacity . . . ."

4

Fed. R. Evid. 801(d)(2)(A). Despite the use of the term "admission," party statements admissible under Rule 801(d)(2)(A) "need not have been against the party's interest when made." 5 Weinstein's Federal Evidence § 801.30[1], at 801-49 (2d ed. 2007) (contrasting 801(d)(2)(A) admissions with statements against interest under Rule 804(b)(3)); *see United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000) (same). Of course, the mere fact that a statement is not hearsay does not mean it is admissible; the evidence still must pass muster under Rule 402's relevance standard[1] and Rule 403's requirement that the probative value of the evidence not be substantially outweighed by unfair prejudice.[2] Here, Mr. Abu-jihaad does not contest that the statements at issue are admissions, and thus not hearsay. Instead, he argues that the statements have no relevance to any of the issues in this case and that they are in any event highly prejudicial.

Judge Weinstein has wisely cautioned that "the determination of relevance is not automatic or mechanical. Courts cannot employ a precise, technical, legalistic test for relevance; instead they must apply logical standards applicable in every day life." 2 Weinstein's Federal Evidence § 401.04[1], at 401-14 (2d ed. 2007). Assessing the probative worth of any particular piece of evidence is a matter of analysis, reasoning, and judgment. As Rule 401 itself acknowledges, evidence that would tend to alter the probability of the existence or non-existence of a consequential

---

[1] Rule 402 provides that "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

[2] Rule 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

fact or a proposition to be proved is relevant evidence. *See* Fed. R. Evid. 401. As the Supreme Court noted in *Huddleston*, "'Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.'" 485 U.S. at 689 (quoting Advisory Committee's Notes on Rule 401). Under Rule 402, all evidence that is relevant is admissible. *Ramirez*, 894 F.2d at 569.

That evidence is relevant and admissible, however, does not mean that a court should admit it if the probative value of the evidence is substantially outweighed by other concerns, such as unfair prejudice. *See* Fed. R. Evid. 403. Mere prejudice, of course, is not sufficient to exclude relevant evidence, since all inculpatory evidence is, by definition, prejudicial. To be excludable under Rule 403, the prejudice must be "unfair," in the sense that the evidence has some "adverse effect beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quotation marks and alteration omitted); *United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). As the Supreme Court has explained, "'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," or in other words "'an undue tendency to suggest decision on an improper basis.'" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 Advisory Committee's notes). "To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998).

　　1.　*Contact and Familiarity with Azzam.*　During various conversations in November and December 2006, Mr. Abu-jihaad admitted that he corresponded with the Azzam site,

that he sent the email discussing the bombing of the *U.S.S. Cole* that will be a key piece of evidence in the Government's case, and that he is familiar with Maktabah-Al-Ansar, whose materials were openly marketed on the Azzam websites, and "Waaqiah," which was one of the family of Azzam websites.  *See* AR033-034; Nov. 19 and 20, 2006 CST recordings.  These statements by Mr. Abu-jihaad are directly relevant to issues in this litigation regarding his contact with the Azzam website and his sending of the *U.S.S. Cole* email.  *See, e.g.*, *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007); *United States v. Cusack*, 229 F.3d 344, 348 (2d Cir. 2000).  It is certainly true that the statements were made five years after the events at issue in this case, and they do not expressly mention the Battle Group Document that is the focus of the charges against Mr. Abu-jihaad.  Nevertheless, the statements refer back to Mr. Abu-jihaad's prior contacts with the Azzam website and thus are directly related to the crimes charged.  In the parlance of the *Federal Rules*, this evidence makes it more probable that Mr. Abu-jihaad was communicating with the Azzam site, and thus bears on the sending of the Battle Group Document.  The Court also has little difficulty concluding that the probative value of these statements is not substantially outweighed by any unfair prejudice.  The statements may be prejudicial, but when coupled with an appropriate limiting instruction, they do not have an undue tendency to suggest that the jury decide this case on an improper basis.

2.     *Interest in Secrecy.*     Mr. Abu-jihaad made a number of statements in November and December 2006 expressing a keen interest in secrecy, using code in speaking with Messrs. Shareef and Crisman (about logistics and jihad, for example, *see* AR009) and admitting to destroying materials and videos once the news media published articles about the Battle Group Document (*see, e.g.*, AR034).  The Government contends that Mr. Abu-jihaad's interest in secrecy and destruction

of materials would help explain why there is no "forensic fingerprint" of his having sent the Battle Group document. Government's Supplemental Memorandum of Law re: Admissions of Party Opponent ("Government's Supp. Mem.") [doc. # 175], at 3. The defense has made it clear that the lack of such forensic fingerprints will be a major focus of Mr. Abu-jihaad's defense. Therefore, Mr. Abu-jihaad's rather intense focus on secrecy, use of code, and destruction of materials is surely relevant to issues that will be contested in this case. It is true that these statements regarding secrecy occurred in 2006, while the events at trial occurred in 2001. However, the Court concludes that it is properly for the jury to determine whether the passage of time diminishes the strength of the inference the Government seeks to draw from the evidence. *See, e.g.*, *United States v. Schultz*, 333 F.3d 393, 414 (2d Cir. 2003) ("[F]actors which make evidence less than conclusive affect only weight, not admissibility.") (quotation marks omitted). Furthermore, the Court is not convinced that any possible prejudice from this evidence is either unfair or substantially outweighs the probative value of this evidence.

That said, the Court will not permit the Government to introduce any of the various conversations between Mr. Abu-jihaad and Mr. Crisman concerning Mr. Shareef talking too much about Mr. Abu-jihaad's background and alleged connection with the Battle Group Document (*see, e.g.*, AR008, AR032) or any statements between Mr. Shareef and Mr. Abu-jihaad in which Mr. Abu-jihaad complains about Mr. Shareef talking too much about those matters (*see* AR009). Admitting those statements into evidence would undermine the Court's co-conspirator ruling. Furthermore, the Court notes that there are quite a few statements by Mr. Abu-jihaad about the need for secrecy and use of code, and the Court is, therefore, concerned that if every one of these statements were

admitted, they would be cumulative. *See* Fed. R. Evid. 403. The Government should bear the Court's concern in mind as it selects the conversations that it wishes to introduce.

3.    *Ability to Provide Support.*    In a call on November 11, 2006, Mr. Abu-jihaad tells Mr. Crisman that "I don't know how to get [Mr. Shareef] no hot meal," and states that "I ain't been working ah in, in, in the field of making meals and or, you know . . . [i]n a, in a long time. I've been out of that for, ah, over ah, quatro years you know." AR010; AR009; *see* Government Listing at 5-6. The Government contends that a

> jury could reasonably conclude that "meals" refers to intelligence that would be useful to strike U.S. military targets; that "making meals" refers to providing such intelligence; and that Abu-Jihaad's statement that he was previously "working . . . in [that] field" is an admission that he previously did, in fact, provide such intelligence, and that such activity occurred over four years earlier – that is, while he was still in the military. The defendant's other statements regarding "hot" and "cold" meals would help the jury to understand precisely what the defendant means by those terms, and they are accordingly quite probative of the issues in dispute in this case.

Government's Supp. Mem. [doc. # 175], at 2.

The Court agrees that these statements constitute relevant evidence within the meaning of Rules 401 and 402, since they bear directly on the crimes charged in this case – the provision of intelligence information – precisely as the Government suggests. *See, e.g.*, *Lombardozzi*, 491 F.3d at 79; *Cusack*, 229 F.3d at 348. Mr. Abu-jihaad's counsel are rightly concerned that a jury not use this evidence improperly. The Court shares this concern. The Court also well understands that cautionary instructions are not always effective in preventing unfair prejudice. *See, e.g.*, *United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006) ("We know that limiting or curative instructions cannot always undue the damage of prejudicial evidence."). However, in this instance, considering the conversations at issue and the probative nature of the proffered evidence, the Court

is satisfied that an appropriately worded cautionary instruction regarding the proper and improper use of this evidence will adequately address concerns of unfair prejudice. *See United States v. Yousef*, 327 F.3d 56, 121-22 (2d Cir. 2003); *Salameh*, 152 F.3d at 110-11. Further, the conversations in question will likely have to be edited to remove any statements that are not admissible in accordance with the Court's orders.

4.  *Statements About Mr. Shareef's Arrest.*    When Mr. Crisman informed Mr. Abu-jihaad of Mr. Shareef's arrest, Mr. Abu-jihaad made various statements to the effect that he would deny knowing anything about Mr. Shareef's plans or being interested in Mr. Shareef's schemes. *See* AR036. The Government contends that these statements could reasonably be viewed by the jury as demonstrating Mr. Abu-jihaad's consciousness of guilt for the alleged sending of the Battle Group Document in 2001. As the Government points out, "[e]vidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004); *United States v. Mickens*, 926 F.2d 1323, 1328-29 (2d Cir. 1991).

The Court disagrees not with the Government's statement of governing law, but rather with its premise – that is, that these 2006 statements by Mr. Abu-jihaad could reasonably be viewed as demonstrating his consciousness of guilt for sending the Battle Group Document in 2001. Mr. Abu-jihaad had just been in discussions with Messrs. Shareef and Crisman about their plan to conduct some kind of operation directed toward a U.S. military installation. If these statements indicate consciousness of guilt about anything, it is about those actions, as well as Mr. Abu-jihaad's interest in purchasing guns from Mr. Crisman. The connection – or string of inferences upon inferences –

between these statements in 2006 and the events of 2001 is simply too tenuous and too remote.[3]

Therefore, the Court concludes that this evidence is of marginal, if any, relevance. Furthermore, given the tenuous nature of the linkage to this case, there is a strong likelihood that the jurors will be misled by the evidence and that Mr. Abu-jihaad will be unfairly prejudiced by its admission. *See United States v. Szur*, 289 F.3d 200, 217 (2d Cir. 2002); *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000).

As a consequence, the Court will exclude this proposed evidence under Rule 403. However, to the extent that any of these post-Shareef-arrest statements by Mr. Abu-jihaad refer to contacts with Azzam, the *U.S.S. Cole* email, or Mr. Abu-jihaad's destruction of videos and materials after news of the Battle Group Document was reported in the media, the statements are admissible for the reasons cited previously.[4]

### III.

The Court therefore GRANTS IN PART, DENIES IN PART, and RESERVES IN PART on the remaining aspects of the Government's Motion in Limine Pursuant to Federal Rules of Evidence

---

[3] The Government quotes Judge Weinstein for the proposition that although the probative value of consciousness-of-guilt evidence "'diminishes if the defendant committed several unrelated crimes, [this] does not make such evidence inadmissible; it means only that such evidence alone is insufficient to demonstrate consciousness of guilt . . . .'" Government's Supp. Mem. [doc. # 175], at 5 (quoting 2 Weinstein's Federal Evidence § 401.08[4], at 401-62.4 (2d ed. 2007)). It is not clear what other evidence the Government relies on to "demonstrate consciousness of guilt." Putting that to the side, however, the Court simply does not see how a jury – other than by sheer speculation – could conclude that Mr. Abu-jihaad's 2006 statements to Mr. Crisman related to consciousness of guilt about providing the Battle Group Document to Azzam in 2001.

[4] Furthermore, Mr. Abu-jihaad's admission that he destroyed jihadi videos and materials immediately following media reports regarding the Battle Group Document could (unlike the other statements the Government seeks to introduce) properly and reasonably be construed by the jury as evidence of Mr. Abu-jihaad's consciousness of guilt regarding the charges at issue in this case.

801(d)(2)(E) and 801(d)(2)(A); Notice of Intention to Introduce Certain Evidence of Intent; and Notice of Intention to Rely on Other Act Evidence Pursuant to Rule 404(b) [doc. # 110].  No later than **February 8, 2008**, the Government must provide the defense with the precise portions of the recorded conversations that the Government intends to use in accordance with this ruling.  No later than **February 15, 2008**, the defense must inform the Government of any objections to the Government's proposed evidence, or any additions to ensure completeness.  Furthermore, no later than **February 15, 2008**, both the Government and the defense shall submit proposed cautionary instructions to be read to the jury regarding the evidence that the Court has found admissible in this ruling.

IT IS SO ORDERED.

/s/        Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 31, 2008.**