# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNTIED STATES OF AMERICA | : |
| | : |
| v. | :     No. 3:07CR57(MRK) |
| | : |
| HASSAN ABU-JIHAAD | : |

## RULING AND ORDER

Currently pending before the Court is the Government's Amended First Classified *In Camera*, *Ex Parte* Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure (the "First CIPA Motion") [doc. # 89]. The Court required the Government to file a redacted version of its First CIPA Motion on the public record, and the Government did so. Thereafter, Defendant Hassan Abu-jihaad filed a Memorandum in Opposition [doc. # 95] to the Government's First CIPA Motion, and the Government filed a Reply [doc. # 98] and also a Supplemental Brief [doc. # 179] at the Court's request.

The Court previously issued a ruling setting forth the procedures the Court would follow in considering the First CIPA Motion. *See* Ruling & Order [doc. # 101]. The Court assumes familiarity with that ruling. As indicated in the Court's procedural ruling, the only issue addressed by this ruling is whether the classified information submitted to the Court *in camera* and *ex parte* "is discoverable at all." *See id.* at 4. Although the Government filed its First CIPA Motion in August 2007, the Court decided not to rule on the motion until the case had developed further and the Court had held hearings in November 2007 on the Government's request to admit certain evidence at trial. *See* Memorandum of Decision [doc. # 173]; Ruling & Order [doc. # 185]. Waiting

on the motion has enabled the Court to gain a greater understanding of the issues and defenses in this case, as well as the likely evidence and witnesses. In considering the motion, in addition to reviewing the parties' briefs, the Court has also reviewed a classified declaration of a United States government official, copies of the classified materials that the Government seeks to withhold from discovery (referred to as Exhibits 2, 3, and 4), and the Government's proposed order.

Having considered the issues presented, the Court concludes that the materials provided the Court *in camera* and *ex parte* are classified information, the disclosure of which would adversely affect national security, and that they are not discoverable under the *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), line of cases or under Rule 16 of the *Federal Rules of Criminal Procedure*.

## I.

Because the Government has filed a second motion under the Classified Information Procedures Act, 18 U.S.C. App. III ("CIPA"),[1] the Court will set forth in some detail the principles that govern its consideration of the Government's CIPA motions.

CIPA's fundamental purpose is to "'establish procedures to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest.'" *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (quoting *United States v. Wilson*, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983)); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (CIPA provides courts with the procedural tools needed

---

[1] *See* Government's Second Classified *In Camera*, *Ex Parte* Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure (the "Second CIPA Motion") [doc. # 165]. The merits of the Government's Second CIPA Motion will be the subject of a separate ruling.

to "'protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'") (alteration omitted) (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)); *see also United States v. Apperson*, 441 F.3d 1162, 1192 n.8 (10th Cir. 2006). Section 4 of CIPA, 18 U.S.C. App. III § 4, and Rule 16(d)(1) of the *Federal Rules of Criminal Procedure* each authorize a district court to deny or otherwise restrict discovery of classified information in appropriate circumstances. *See O'Hara*, 301 F.3d at 569 ("CIPA's plain terms evidence Congress's intent to protect classified information from unnecessary disclosure . . . ."). Section 4 provides in part as follows:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. App. III § 4. For its part, Rule 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1) ("The court may permit a party to show good cause by a written statement that the court will inspect ex parte.").

Under both § 4 of CIPA and Rule 16(d)(1), a court may authorize the Government to withhold from the defense any classified materials that are not properly discoverable. *See United States v. Yunis*, 867 F.2d 617, 624-25 (D.C. Cir. 1989); *United States v. Libby* (*Libby I*), 429 F. Supp. 2d 18, 21-22 (D.D.C. 2006). And even when a court concludes that the classified materials in question contain properly discoverable information, a court may permit the Government to produce the discoverable information in a different form (redacted, for example) that would protect national

3

security information, or may approve the substitution of unclassified summaries of properly discoverable information or a statement admitting relevant facts that the classified information would tend to prove. 18 U.S.C. App. III, §§ 4, 6(c); *see United States v. Mejia*, 448 F.3d 436, 456 n.18 (D.C. Cir. 2006); *United States v. Moussaoui* (*Moussaoui I*), 365 F.3d 292, 313-14 (4th Cir. 2004); *Pappas*, 94 F.3d at 799; *United States v. Libby* (*Libby II*), 467 F. Supp. 2d 20, 24-25 (D.D.C. 2006), *United States v. Paracha*, No. 03 CR. 1197(SHS), 2006 WL 12768, at *10 (S.D.N.Y. Jan. 3, 2006). Thus, in *United States v. Rahman*, 870 F. Supp. 47 (S.D.N.Y. 1994), Judge Michael B. Mukasey noted that it may be "sufficient to disclose the substance of the information [in the Government's possession] . . . . The document itself need not be disclosed." *Id.* at 53.

Because CIPA applies to classified information, any motion under CIPA must first establish that the information in question is classified.[2] *See United States v. Yousef*, 327 F.3d 56, 168 n.78 (2d Cir. 2003); *see also Mejia*, 448 F.3d at 455; *United States v. Sarkissian*, 841 F.2d 959, 965-66 (9th Cir. 1988). In this case, that was accomplished through the declaration of a United States government official who adequately described the reasons for the classification of the information and the harm to the national security that could result from disclosure. *See Libby I*, 429 F. Supp. 2d at 25; *Rahman*, 870 F. Supp. at 50. Having reviewed the relevant declaration as well as the information at issue, the Court is satisfied (as it indicated in its previous ruling) that the subject matter of the Government's First CIPA Motion involves classified information.

---

[2] The term "classified information" includes "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. III § 1(a). "National security" means "the national defense and foreign relations of the United States." *Id.* § 1(b).

4

Next, the Court must decide whether the Government will be permitted, as it requests, to withhold the classified information from the defense on the ground that the information is not properly discoverable. As this Court has previously noted, CIPA is a procedural statute; it neither grants new substantive rights nor limits existing ones. As the Fifth Circuit has explained, CIPA was not "intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *see Yunis*, 867 F.2d at 621 (CIPA "creates no new rights of or limits on discovery of a specific area of classified information."). Therefore, a court utilizing CIPA's procedures applies preexisting law governing discovery in criminal cases to classified information. *See United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *Yunis*, 867 F.2d at 621; S. Rep. No. 96-823, at 6 (1980) (CIPA was intended to "clarify[]" a court's "powers under Federal Rule of Criminal Procedure 16(d)(1)" to protect classified information).

Relying on the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957), – which involved disclosure of a government informant's identity – the D.C. Circuit in *United States v. Yunis*, 867 F.2d at 622, developed a "relevant and helpful" standard for determining whether classified information may be withheld from discovery under CIPA and Rule 16(d)(1). Thus, in its key holding, the *Yunis* court stated as follows:

> We hold, in short, that classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information, like a defendant seeking the informant's identity in *Roviaro*, is entitled only to information that is at least "helpful to the defense of [the] accused."

*Id.* at 623 (quoting *Roviaro*, 353 U.S. at 60-61); *see also id.* at 625; *see generally United States v. Jackson*, 345 F.3d 59, 69-70 (2d Cir. 2003) (discussing Government's obligations under *Roviaro*).

Using that standard, *Yunis* granted the Government's request to withhold the defendant's statements from discovery.[3] The court found that the relevance of the statements was "no more than theoretical [since] [n]othing in the classified documents in fact goes to the innocence of the defendant *vel non*, impeaches any evidence of guilt, or makes more or less probable any fact at issue in establishing any defense to the charges." *Yunis*, 867 F.2d at 624. Even affording the defendant what the court termed as the "near presumption of relevance of his own statements," the court nonetheless found that its *ex parte* review of the documents fell "far short of establishing the helpful or beneficial character necessary to meet the second step of the test" – namely, the requirement that the information be "helpful or beneficial." *Id.* Because the court's review "disclose[d] nothing of this sort," the court of appeals reversed the district court's order requiring disclosure. *Id.* at 625.

The *Yunis* "relevant and helpful" standard has been embraced by other courts that have considered Government requests to withhold classified information under CIPA and Rule 16(d)(1). *See, e.g.*, *Mejia*, 448 F.3d at 455-56; *United States v. Moussaoui* (*Moussaoui II*), 382 F.3d 453, 472 (4th Cir. 2004); *Klimavicius-Viloria*, 144 F.3d at 1261; *Varca*, 896 F.2d at 905; *United States v. Smith*, 780 F.2d 1102, 1109-10 (4th Cir. 1985); *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984); *Paracha*, 2006 WL 12768, at *10. Thus, the Fourth Circuit phrases the standard as follows: "[A] defendant becomes entitled to disclosure of classified information upon a showing that

---

[3] *Yunis* involved a defendant accused of hijacking an airplane on an international flight. The Government sought to withhold from discovery certain recorded conversations involving the defendant that the Government asserted were not relevant to the hijacking or any other criminal activity. *Yunis*, 867 F.2d at 618.

the information is relevant and helpful to the defense or is essential to a fair determination of a cause." *Moussaoui II*, 382 F.3d at 472 (quotation marks and alteration omitted). In its brief, the Government – which urges this Court to adopt *Yunis*'s "relevant and helpful" rubric – represents that "[a]ll courts to have considered the issue under CIPA Section 4 and Rule 16(d)(1) have followed *Yunis* to apply the 'relevant and helpful' standard for discovery of classified information." Government's First CIPA Motion at 11.[4] Mr. Abu-jihaad has not challenged that representation. Having considered *Yunis* and the cases following it, this Court also adopts the "relevant and helpful" standard in assessing the Government's CIPA motions in this case.

In determining whether classified information is properly discoverable, it is apparent – and the Government acknowledges – that any information encompassed by the Supreme Court's holdings in *Brady* and *Giglio* necessarily qualifies as "relevant and helpful" within the meaning of *Yunis*. *See Mejia*, 448 F.3d at 456-57.[5] The Second Circuit recently described a prosecutor's obligations under *Brady* and *Giglio* as follows:

> *Brady* and its progeny require the Government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Brady*, 373 U.S. at 87 (due process obligation to disclose to the defendant "evidence favorable to an accused"); *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) ("material evidence favorable to the defendant") (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)). This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions. To begin with, it recognizes the possibility that the evidence on which the prosecution relies to prove the defendant's

---

[4] All citations to the Government's First CIPA Motion are to the redacted motion filed on the public record.

[5] The D.C. Circuit in *Mejia* noted as well that "[w]hile *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being "favorable" in the *Brady* sense . . . ." *Mejia,* 448 F.3d at 457.

7

> guilt is not necessarily truthful, accurate, or complete, especially when the prosecution's investigations have made it aware of evidence or information that might be favorable to the defense in controverting the Government's proofs.

*United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007).

Exculpatory information is that which is probative of the defendant's guilt or innocence (or punishment). *See, e.g.*, *Leka*, 257 F.3d at 98; *Avellino*, 136 F.3d at 255; *see generally Strickler*, 527 U.S. at 281-82. Impeachment evidence is information "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *Avellino*, 136 F.3d at 255; *accord United States v. Madori*, 419 F.3d 159, 170 (2d Cir. 2005); *see also Jackson*, 345 F.3d at 72 ("*Brady* and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant."). Material must be disclosed under *Brady* even if the information has inculpatory, as well as exculpatory, aspects. *See United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004). Furthermore, in *Rodriguez*, the Second Circuit explained that the Government's obligations under *Brady* "do[] not depend on whether the information to be disclosed is admissible as evidence in its present form." 496 F.3d at 226 n.4. As the court put it: "The objectives of fairness to the defendant, as well as the legal system's objective of convicting the guilty rather than the innocent, require that the prosecution make the defense aware of material information potentially leading to admissible evidence favorable to the defense." *Id.* (providing, as an example, a reliable informant's inadmissible hearsay statement to the effect that the defendant was innocent and had been framed by a rival gang); *see United States v. Gil,* 297 F.3d 93, 104 (2d Cir. 2002).

## II.

With these principles in mind and giving Mr. Abu-jihaad the benefit of the doubt,[6] the Court has little difficulty concluding that the Government may withhold from discovery the information that is the subject of the Government's First CIPA Motion. The Court reaches this conclusion for a variety of reasons. First, based upon the affidavit submitted, the Court finds that disclosing the classified materials would harm national security.

Second, having reviewed the materials at length – and considering the crime charged, possible defenses, witnesses, and evidence, and other relevant factors[7] – the Court finds that the information is not properly discoverable. Most of the information has nothing whatsoever to do with any issue in this case or any criminal activity at all. *See, e.g.*, *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (Rule 16 did not require Government to disclose tape recordings of defendant that were "wholly innocuous" or had nothing to do with the crime charged). Nor does the information relate to any witness whom the Government will call at trial. Therefore, as in *Yunis*, the relevance of most of the information contained in the classified materials is "no more than theoretical." 867 F.2d at 624. In any event, the Court does not believe that any of the information can be seen as helpful or beneficial to the defense, and it is certainly neither exculpatory nor impeaching. Finally,

---

[6] In *Mejia*, the D.C. Circuit explained that since the defense typically does not have access to classified materials on a CIPA motion and is in the best position to know what is likely to be helpful, a court should give the defendant the benefit of any doubt in deciding whether the Government should provide the defendant with any classified information. *See* 448 F.3d at 458 (Because the defense is in the best position to know whether information would be helpful, "we have applied the 'at least helpful' test in a fashion that gives the defendants the benefit of the doubt.").

[7] The Second Circuit has explained that in making a materiality determination under *Roviaro*, a court should consider "the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors." *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991) (quotation marks omitted); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (same).

much of the information is already known to Mr. Abu-jihaad, or is duplicative of information Mr. Abu-jihaad already possesses. Therefore, to the extent Mr. Abu-jihaad might disagree with the Court's assessment and believe that the information in the classified materials is helpful to his defense, he is in a position to take advantage of that information. *See, e.g.*, *United States v. Orena*, 145 F.3d 551, 557 n.4 (2d Cir. 1998) ("It is well settled that evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of that evidence.") (quotation marks omitted); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) ("'[T]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government.'") (quoting *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)); *Varca*, 896 F.2d at 905 (no need to disclose information already known to defendant). In sum, the Court finds that the information subject to the First CIPA Motion does not satisfy the "relevant or helpful" standard; nor is disclosure essential to a fair determination of this case.[8]

### III.

Therefore, the Court GRANTS the Government's Amended First Classified *In Camera*, *Ex Parte* Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure [doc. # 89]. The Government

---

[8] As a consequence, the Court need not, and does not, address the Government's argument that even when classified information is relevant and helpful, a court may withhold it from the defense after balancing the "'public interest in protecting the flow of information against the individual's right to prepare his defense.'" Government's First CIPA Motion [doc. # 89] at 12 (quoting *Roviaro*, 353 U.S. at 62).

need not disclose to the defense the classified materials attached to the motion as Exhibits 2, 3, and 4. However, both the Government and the Court's Security Officer must preserve the classified materials in their entirety so they can be provided to the Second Circuit for its review in the event of any appeal. *See* 18 U.S.C. App. III § 4, Fed. R. Crim. P. 16(d)(1).

                        IT IS SO ORDERED.

                /s/      Mark R. Kravitz
                     United States District Judge

**Dated at New Haven, Connecticut: February 4, 2008.**